LAWRENCE *et ux.* Lessee vs. HEISTER *et al.*

APPEAL from *Washington* County Court. Ejectment by the appellant to recover the following tracts of land: *Addition to Hagar's Delight, New Work, The Resurvey on New Work, Rohrer's Fancy, Hagar's Fancy, Great Hall, Found it Cut,* and *The Resurvey on Dawson's Strife,* all lying in the county of *Washington.* The general issue was pleaded. It was admitted upon the trial that *Jonathan Hager,* the elder, was seized in fee of the lands in dispute, and being so seized, died in 1775, intestate, leaving two children only, to wit, *Jonathan Hager,* the younger, his heir at law, and *Rosannah,* a daughter, who in his life time married *Daniel Heister,* the younger, in the year 1771. That at November session 1781, *ch.* 3, the legislature of this state passed a law "for vesting an estate for life in *Daniel Heister,* the younger, and an estate in fee simple in *Rosannah,* his wife, in fourteen hundred acres of land lying in *Washington* county, and in five lots of land lying in *Elizabeth* town, in the said county." The preamble of this act recited, that "Whereas the said *Daniel Heister,* by his petition has represented to this general assembly, that *Jonathan Hager,* late of *Frederick* county, was brought to a sudden death by an accident, and died intestate, leaving one son and one daughter, (the wife of the petitioner,) whereby his real estate descended to his son *Jonathan Hager,* then an infant; that the said *Jonathan Hager,* in November 1775, being then above 19 years of age, by writing agreed to convey to his sister and the said *Daniel Heister,* and their heirs, the quantity of 1400 acres of land, and five lots of land lying in *Elizabeth* town, in *Washington* county, being part of his late father's estate: that the said *Jonathan Hager* afterwards, in July 1776, being then above 20 years of age, again agreed in writing to convey the same land and lots to his sister and the petitioner in fee, and immediately thereafter entered into the *American* service, and was taken prisoner in the month of August 1776, and was carried to *Halifax* in *Nova Scotia;* that in August 1777, the petitioner obtain-

Independent of the acts of assembly of 1715, ch 47, 1752, ch 3, and November 1766, ch 14, there was no legal mode by which a *feme covert* could transfer her interest in land, but by common recovery or fine.

By the act of 1715 a *feme covert,* if she is named as grantor in a deed of bargain and sale, may be barred of her lands if she acknowledged the deed in the manner prescribed by that act, but the husband must also be a grantor in the deed.

The act of 1765 is more explicit than the act of 1715, and shows, that where the interest of the *feme covert* is to be conveyed or barred, she must join with her husband in the conveyance intended to pass her interest, and the conveyance must be acknowledged by the husband.

To pass the interest of the wife in her land, she and her husband must join in the deed as grantors, and it must be acknowledged by the husband.

D H, of the state of *Pennsylvania,* and R, his wife, by deed, signed, sealed and delivered by them, and dated the 10th of February 1782, conveyed to W H, certain lands in this state, of which R was seized in fee. It was acknowledged by them as their respective act and deed, on the 14th of February, 1782, before a justice of the supreme court of the state of

*Pennsylvania,* who took and certified the privy acknowledgment of R, the wife of D H, in the mode prescribed by the laws of this state to which there was the certificate of the president of the supreme executive council of the state of *Pennsylvania,* under the seal of the state, that the person who took the acknowledgments was one of the justices of the supreme court of that state. The deed was duly recorded in the records of the county, in which the lands lie, on the 7th of May 1782; but it was not acknowledged by D H, except in the manner before stated—*Held,* that the deed was inoperative to pass the interest of R, in the lands therein mentioned, to W H, the grantee in the deed, the acknowledgment by D H not being in the manner prescribed by law, the law not authorising the husband, though a non resident, to acknowledge a deed so as to pass lands in this state, before any officer or tribunal out of the state.

ed leave of the board of war to go to *Halifax*, where the said *Jonathan Hager*, being then of age, in a private manner executed a deed expressing to convey to the said *Daniel Heister*, in fee simple, the said 1400 acres of land, and the five lots aforesaid; and also made and executed a power of attorney to him the said *Daniel Heister*, but which, from the particular circumstances the parties were in at the time, could not be done in every point of formality, nor the same be brought off so as to be recorded agreeable to the laws of this state; and which said deed, so executed by the said *Jonathan Hager*, the son, expressed to convey 1400 acres of land situate in *Conococheague* settlement, being part of the land lately owned by and in possession of *Jonathan Hager*, late of *Frederick* county, deceased, father of *Jonathan Hager*, party thereto, 500 acres of said 1400 acres, to be bounded as follows, &c. &c. and the said *Jonathan Hager*, the son, did also by his said deed direct the other 900 acres of land to be divided and laid off, as seven impartial men, or a majority of them, should think reasonable and just; and likewise therein nominated the said seven men to be *Joseph Sprigg*," &c. "and the said *Jonathan Hager*, the son, did also by the same deed express to convey a house and lot, late in the tenure of *Thomas Semmes*, two lots," &c "And whereas the said *Joseph Sprigg*," &c. "in virtue of the said nomination and appointment, did afterwards, to wit, on the 5th of September 1778, lay off and divide the said 900 acres of land, and accordingly, on the day and year last aforesaid, did make and execute a deed of division or partition, describing the courses, &c. which said deed was afterwards recorded, &c. all which facts appearing," &c. "Be it therefore enacted, &c. That an estate in fee simple shall be and is hereby vested in the said *Rosannah Heister*, the wife of the said *Daniel Heister*, the younger, of and in the said 1400 acres of land, and the said lots of ground, houses and premises, with all," &c. "to have and to hold the same, and every part thereof, unto the said *Rosannah Heister*, and her heirs, according to the description and location thereof in this act, and the said deed of division or partition contained, with full power and authority to the said *Rosannah* to alien and convey the said premises," &c. "or any part thereof, in fee simple, or otherwise, in as full and ample manner as any other *feme covert* may or can convey any real property by the laws of this state. Provided al-

1813.

Lawrence
vs
Heister.

ways, and it is the true intent and meaning of this act, that the said *Daniel Heister*, the younger, shall have and be entitled unto, and he is hereby declared to be vested with an estate during the term of his own life, of and in all and singular the aforesaid premises," &c.

It was admitted that the lands mentioned in this act of assembly were the lands mentioned in the declaration, and that *Daniel Heister*, the younger, and *Rosannah* his wife, the persons named in the said law, entered and were seized under said law of the lands therein mentioned, and both died without issue; that *Elizabeth*, wife of *Upton Lawrence*, one of the lessors of the plaintiff, and who is the other lessor, is heir at law of the said *Rosannah*, and as her heir at law claims, and makes title to the said lands, in the said law and declaration mentioned. That the defendants, (now appellees,) are devisees of the said lands in fee, under the will of *Daniel Heister*, the younger, duly executed, and claim the same as his devisees. The defendants then read to the court and jury an original deed from *Daniel Heister*, the younger, and *Rosannah* his wife, before named, with the several endorsements, certificates, and acknowledgment thereon, with the deposition thereto annexed, taken by consent of parties. This deed was dated the 10th of February 1782, and was "between *Daniel Heister*, the younger, of *Upper Salford* township, in the county of *Philadelphia*, and state of *Pennsylvania*, and *Rosannah* his wife, of the one part, and *William Heister* of the town of *Reading*, in the county of *Berks*, and state aforesaid, of the other part," and stated, that in consideration of £7500 specie, they granted, &c. unto the said *William Heister*, &c. 1400 acres of land in *Washington* county, state of *Maryland*, and one house and five lots in *Elizabeth* town, 500 acres, part of the said 1400 acres, beginning at, &c. 800 acres, another part, &c. beginning, &c. and the reversion, &c. and also all the estate of them the said *Daniel Heister*, and *Rosannah* his wife, &c. The deed was signed, sealed and delivered, by *Daniel Heister*, jun. and by *Rosannah* his wife, in presence of *George Smith* and *Henry Funk*, and a receipt for the consideration money was also signed by the grantors. It was thus acknowledged—"On the fourteenth day of February 1782, before me, *George Bryan*, esquire, one of the justices of the supreme court of the state of

*Pennsylvania*, came *Daniel Heister*, the younger, and ac¬ knowledged the within indenture to be his act and deed, and the lands and premises therein mentioned to be the right and estate of the within named *William Heister*, for the uses and purposes therein mentioned. Also on the same day and year, came *Rosannah Heister*, the wife of the said *Daniel Heister*, before me, and acknowledged the said within indenture and instrument of writing to be her act and deed, and the lands and premises therein, men¬ tioned to be the right and estate of the within named *Wil¬ liam Heister*, his heirs and assigns, for ever, according to the true intent and meaning thereof, and for the uses and purposes therein mentioned: And the said *Rosannah Heis¬ ter* being of lawful age, and by me privately examined out of the hearing of her said husband, confessed that she made the same acknowledgment willingly and freely, and with¬ out being induced thereto by fear or threats of, or ill-usage by, her husband, or fear of his displeasure. Taken and certified by me, *George Bryan*, (Seal.)

*Pennsylvania*, ss. His excellency *William Moore*, es¬ quire, president, and the supreme executive council of the commonwealth of *Pennsylvania*, To all to whom these presents shall come, Greeting. Know ye, that the honour¬ able *George Bryan*, whose name is subscribed to the fore¬ going instrument of writing, was at the time of subscrib¬ ing the same, and now is, one of the justices of the supreme court of the said commonwealth, and full faith and credit is and ought to be given to him as such. Given, by order of the council, under the hand of his excellency *William Moore*, esquire, president, and the

(Seal of the State of Pennsylvania.) seal of the state, at *Philadelphia*, this fourteenth day of February *anno domini* one thousand seven hundred and eighty-two.

*Wm. Moore*, President.

Attest. *T. T. Matlack*, Sec'y."

The deed was recorded on the 7th of May 1782, amongst the records of *Washington* county. Annexed to it was the deposition of *George Smith*, proving, among other things respecting the declarations of *Mrs. Heister* in relation to the deed, that the said deed was signed, sealed and deli¬ vered, by the grantors therein named, as their act and deed, &c. It was also admitted that *Daniel Heister*, and *Rosan¬*

*nah* his wife, were respectively above the ages of 21 at the time of the execution of this deed; and that the facts stated in the deposition annexed to the deed were true. It was also admitted that *William Heister* executed a deed to *Daniel Heister*, the younger, dated the 14th of March 1782, for the same lands as mentioned in the deed from *Daniel Heister*, and wife, to *William Heister*, in consideration of £8000 specie   The grantor and grantee are both stated in the deed to be of the state of *Pennsylvania*. The deed was acknowledged by the grantor before two justices of the peace of *Washington* county in this state, on the 14th of March 1782,   Annexed to it was a letter of attorney to *Tho. Sprigg, John Kershner*, and *Henry Schnebly*, to acknowledge the above deed, dated the 15th Feb. 1782. The deed was recorded in records of *Washington* county the 7th of May 1782.   The defendants then prayed the court to direct the jury, that on the above facts the lessors of the plaintiff were debarred and foreclosed from making title to said lands as heirs to the said *Rosannah*.   Of this opinion the court, [*Buchanan*, Ch. J. and *Shriver*, A. J.] were, and directed the jury accordingly.   The plaintiff excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued before CHASE, Ch. J. and NICHOLSON, and EARLE, J.

*Martin, Pinkney*, (Attorney-General, *U. S.*) and *Mason*, for the Appellant, contended, 1. That a married woman could not convey her inheritance where nothing passed from her husband; and that as the deed from *Daniel Heister*, and *Rosannah* his wife, to *William Heister*, so far as respected the husband, not being legally executed and acknowledged, was a nullity, that deed did not convey or pass the estate of the wife in the lands therein mentioned, although her acknowledgment of it was in the mode pointed out by law.   They referred to 1 *Blk. Com.* 468, 442, 445.   1 *Bac. Ab.* tit. *Baron and Feme*, (C) 476, (J) 495, 497.   The act of 1715, *ch.* 47, *s.* 8, 9, 11.   4 *Vin. Ab.* tit. *Baron and Feme*, (P) 66.   The acts of 1752, *ch.* 8, and November 1766, *ch.* 14, *s.* 2, 3, 4, 6.   1 *Pow. on Cont.* 6, 93, 97.   *Jacob's L. D.* tit. *Deed.*   *Ibid* tit. *Conveyance.*   *Ibid* tit. *Feoffment.*   *Co. Litt.* 327, b.   2 *Bac. Ab.* tit. *Discontinuance;* and *Nicholson's Lessee vs. Hemsley*, 3 *Harr. & M'Hen.* 409.

1813.

Lawrence
vs.
Heister

2. That the acts of assembly have not been complied with in taking the acknowledgment of Mrs. Heister. They referred to the acts of 1752, ch. 8, and November 1766, ch. 14. 6 Bac. Ab. 377, 388, on the construction of statutes; and Bedell vs. Constable, Vaugh. 179.

3. That no parol evidence was admissible to prove the declarations of Mrs. Heister as to her motives in executing the deed referred to. They cited Negro James vs. Gaither, 2 Harr. & Johns. 176.

Key, Shaaff, and Taney, for the Appellees, contended, 1. That although the deed from Daniel Heister, and wife, to William Heister, did not operate in law to pass the estate or interest of the husband, as it was not legally acknowledged, yet it being regularly acknowledged by the wife, it passed her estate, and was legally operative as against her. They referred to 2 Bac. Ab. tit. Grant, 528. Co. Litt. 272, (n), 331, b, 343, (n). Litt. s. 607, 615. Needler vs. Winchester, Hob. 225. Bedford's case, 7 Coke, 8. The act of 1715, ch. 47, s. 11. 1 Bac. Ab. tit. Baron & Feme. (B). Wood vs. Owings, 1 Cranch, 239; and Taylor vs. Horde, 1 Burr. 91.

2. That the parol evidence offered in relation to this deed was admissible. They cited Hall vs. Gittings, 2 Harr. & Johns. 383. That if an action of covenant had been brought on the deed, parol evidence would be admitted to prove its execution.

CHASE, Ch. J. delivered the opinion of the court. This case has been ably and amply discussed by the counsel, and placed in every point of view of which it is susceptible, or which ingenuity, united with profound legal knowledge, could suggest; although the court think the first and important question lies within a narrow compass, and did not seem to admit of that diffusive range of argument in which the counsel have indulged, they have been much gratified by the discussion.

The first and great question is, Whether the deed from Daniel Heister, and wife, to William Heister, is clothed with those requisites and solemnities which the law has prescribed to give it validity to pass the interest of the wife in the lands in question? The court, in forming their judgment, have considered the three acts of assembly of 1715, 1752 and 1766, as being in pari materia, and have

endeavoured to expound them in such manner as is most correspondent with the apparent intention of the legislature; and to guide them in their decision, have adverted to the law as it stood prior to the introduction of the various acts of assembly on the subject.

Independent of the acts of assembly, there was no legal mode by which the wife could transfer her interest but by common recovery and fine. These modes were attended with difficulty, great expense, and considerable delay. The first, although a fictitious proceeding, was conducted as a real action, to recover the wife's land; on the second, more in the form of a conveyance, the wife was examined by the court to know if she parted with her interest willingly.

The legislature which passed the act of 1715, as to the lands of a *feme covert*, had two important objects in view ——The first to provide a facile and expeditious mode for conveying the wife's interest in land; the second to protect the rights of a *feme covert*, and to prevent her husband's passing away her lands, without her consent, declared on an examination made and certified in a particular manner.

Under the act of 1715, the wife, if she is named as a grantor in a deed of bargain and sale, shall be barred of her lands if she acknowledge the deed in the manner prescribed by that act. This certainly means, if she join her husband, who is also a grantor, in the said deed. The legislature never intended the wife should pass her interest, unless her husband, as grantor, joined in the deed.

The act of 1766 is more explicit than the act of 1715, and enacts, that if any *feme covert, joining with her husband* in any of the several conveyances before mentioned, i. e. feoffment, grant, &c. when the *feme covert* hath the right, title or interest, of the lands, tenements and hereditaments, or any part thereof, by such conveyance, *intended to be given*, granted, &c. she shall, by such execution of the said conveyance, examination, acknowledgment and enrolment, be barred. This act plainly shows, that where the interest of the *feme covert* is to be conveyed or barred, she must join with her husband in the conveyance which is proper to pass the interest intended to be transferred, which conveyance shall be acknowledged by the husband. The *second* section enacts, that no estate of inheritance or freehold, or any estate for above seven years, shall pass, un-

1813.

Hutchings
vs
Talbot

less the deed or conveyance shall be acknowledged. The *sixth* section, which refers to the *second*, proves incontrovertibly, that the deed or conveyance in which the *feme covert* is to join with her husband to pass her interest in land, must be a deed or conveyance *acknowledged* by her husband, because no interest or estate in land, for more than seven years, can pass, except the conveyance be acknowledged.

To pass the interest of the wife in her land, the husband and wife must join in the deed as grantors, and the deed cannot be legally efficient and operative to pass her interest, unless it is acknowledged by the husband, for without the solemnity of acknowledgment by the husband, it is not his deed or conveyance to pass the inheritance or freehold, or any estate for above seven years.

JUDGMENT REVERSED. *(a)*

*(a)* See the act of 1816, *ch.* 164.