JOHN McGORTY vs. THE SOUTHERN NEW ENGLAND TELEPHONE COMPANY.

Third Judicial District, New Haven, June Term, 1897. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

As between a telephone company and its linemen, the duty of inspecting and testing the poles upon which they are to work may be imposed upon the latter. Accordingly if a lineman, with knowledge of this requirement of the company, neglects his duty in this particular, and is injured in consequence, he cannot recover damages of the company upon the theory that it is the duty of the master to provide a safe place in which the servant may perform his work.

The question whether the obligation of inspection rests upon the servant or not, in any given case, is a question of fact for the determination of the trial court.

[Argued June 1st—decided October 5th, 1897.]

ACTION to recover damages for personal injuries claimed to have been caused by the negligence of the defendant, brought to the Superior Court in Fairfield County and heard in damages to the court, *Robinson, J.;* facts found and judgment rendered for the plaintiff for nominal ($5) damages only, and appeal by the plaintiff for alleged errors in the rulings of the court. *No error.*

The following facts were found by the court: The plaintiff was an experienced lineman, having worked in that capacity for fourteen years. He was employed as a lineman by the defendant the day before the accident by which he was injured, having been in the service of the defendant some years before in the same capacity. The duties of a lineman are to climb poles and work at wires and cross-arms at or

near the top of telegraph and telephone poles, and sometimes to do the work of a groundman. The work of erecting and taking down poles, and of stringing and removing wires, etc., is performed by gangs of men, usually about six in number, made up of groundmen whose work is upon the ground digging post holes, etc., and of linemen and a foreman. The foreman, who is himself a lineman, gives orders to the men, directing them here and there and keeping them all at work. He is equipped with apparatus for climbing, and climbs poles and works at wires at the top of poles as occasion requires. Division superintendents oversee the work of construction, but give no instructions to the gangs as to how the work shall be performed in detail. Other officers of the defendant company are the general superintendent, who has charge of all the construction work in the State, and an executive committee of the board of directors of the company.

In the work of taking down and rebuilding lines it sometimes happens that old poles have become so weak at the base as to be unsafe for the linemen to work at the top of them in removing wires and cross-arms. Poles are tested by several well known methods to ascertain if they have sufficient strength to bear the climbers, and weak poles are made safe by braces or guy ropes. The durability of a pole is from three to seventeen years, depending upon the character of the soil in which it stands. The pole, the falling of which injured the plaintiff, had been in use about eleven years. Necessary tools for testing and supporting poles were supplied by the defendant, and at this time were in a store-house, five minutes' walk from the place of the accident. It was the custom, rule and practice of the defendant, and of other companies operating lines of wires on poles, that the foreman of a gang was not charged with the work of examining the poles to determine whether linemen might safely climb them. Each lineman was to look out for his own safety in climbing a pole; he judged for himself whether a pole should be tested, and if so, how it should be tested. He inspected and tested for himself before climbing a pole, and from his experience was supposed to be competent to judge what could be done

with reference to any part of the pole.    It was his privilege, when doubting the safety of a pole, to proceed to support it without consulting the foreman, and groundmen and teamsters would go to the storehouse for necessary tools and apparatus when called for.    It was not a rule or practice of the defendant whenever an old line of poles was being replaced by new ones to have the old poles tested at their base, before linemen were ordered or permitted to climb them.

An order having been given by the defendant to a division superintendent to rebuild the defendant's line in Danbury, a gang of men consisting of a foreman (Phelps), two linemen and two groundmen, were engaged in the work.    Before the plaintiff joined the gang most of the new poles had been set, and the work of stripping the corresponding old poles had been largely done, and the foreman and other linemen had worked at the top of the pole in question.    Plaintiff commenced labor on this work on the day of the accident.    The pole in question looked well, and had been tested by one of the linemen, when it stood the test well.    It did not occur to the plaintiff, nor to the linemen who tested the pole, nor to the foreman, that there was any danger in climbing this pole.    In answer to plaintiff's inquiry if the old poles were all right, the foreman replied, "Yes; we have been up there and taken off old wires a hundred times."    Plaintiff did not ask if the old poles had been tested.    Plaintiff knew that this particular pole had been safely climbed by another lineman, and he had himself climbed it in safety an hour or more before the accident.    The foreman sent the plaintiff up the pole in question to remove the remaining wires, and while he was removing the last cross-arm at a place about 30 feet from the ground, the pole, which was rotted through a few inches below the surface of the ground and which had been held in place by the frozen ground and the wires, fell, and the plaintiff falling received serious injuries.

The court found that there was no negligence on the part of the defendant, and that if the accident was the result of negligence it occurred from the fault of the plaintiff.

*James E. Walsh* and *Henry A. Purdy*, for the appellant (plaintiff).

It was the duty of the defendant to make the poles reasonably safe to work upon. It was customary for the linemen to do this work of making a pole safe, and any fault on the part of any of the linemen in not making the pole reasonably safe to work upon, was the fault of the defendant. *McElligott* v. *Randolph*, 61 Conn. 164. While the linemen were testing poles, they were executing their master's duty toward its servants. The plaintiff had the right to rely upon the safety of the pole, because he was a new man upon the job, and the work was nearly completed, and if there was any danger connected with the pole it was the duty of the servants in representing the master to have found it out before this time. The master is bound to exercise due care in reference to the buildings and premises where the labor is to be performed. Wood, Master & Servant, pp. 685, 686; *Coughtry* v. *Glove Woolen Co.*, 56 N. Y. 124; *Roberts* v. *Smith*, 2 H. & N. 213. The injury was not caused by the neglect of a fellow-servant. *McElligott* v. *Randolph, supra; Chapman* v. *Southern Pacific*, 12 Utah, 30; *Ill. Steel Co.* v. *Schymanowski*, 162 Ill. 447; *Turner* v. *Goldsboro Lumber Co.*, 119 N. C. 587; *Ford* v. *Fitchburg R. R.*, 110 Mass. 240; *Pantzar* v. *Tilly Foster Mining Co.*, 99 N. Y. 368. The plaintiff did not owe any duty to make a test of the pole. He was only bound to see patent defects. Wood, Master & Servant, § 335; *Northern Pacific R. R.* v. *Herbert*, 116 U. S. 642, cases there cited.

*John W. Alling* and *James T. Moran*, for the appellee (defendant).

The plaintiff, who was an experienced lineman, was familiar with the rules of his occupation, assumed, when he entered the employ of the defendant, the risks involved in that occupation, and his failure to know the condition of the base of the pole by the fall of which he was injured, was due to his own neglect, or the neglect of his fellow servants, and the defendant was in no manner guilty of negligence. *Tuttle*

v. *Milwaukee R. Co.*, 122 U. S. 189, 195; *Foley* v. *Jersey City Electric Light Co.*, 24 Atl. Rep. 487; *Sullivan* v. *N. Y., etc., R. R.*, 62 Conn. 209; *Green* v. *Western Union Tel. Co.*, 72 Fed. Rep. 250; *Bagley* v. *Consolidated Gas Co.*, 5 App. Div. 432; *Northern Pacific R. R.* v. *Peterson*, 162 U. S. 346; *Central Railroad* v. *Keegan*, ibid. 266; *Oregon R. R.* v. *Frost*, 74 Fed. Rep. 965; *Prescott* v. *Ball Engineering Co.*, 35 Atl. Rep. 224; *Railroad* v. *Brown*, 73 Fed. Rep. 970. As between the plaintiff and defendant, the plaintiff stood charged with informing himself as to the condition of the pole. *Hayden* v. *Smithville Mfg. Co.*, 29 Conn. 548. On the effect of rules as between master and servant, see *R. R. Co.* v. *Dye*, 70 Fed. Rep. 24, 27; *R. R. Co.* v. *Reeson*, 60 id. 370. The employer is not liable for an injury caused by the negligence of other employees erecting a staging, although the staging had been erected before his employment. *O'Connor* v. *Rich*, 164 Mass. 560. The facts found by the court negative the allegations of the complaint on which recovery is sought, and prevent recovery. *Greenthal* v. *Lincoln, Seyms & Co.*, 67 Conn. 372; *Shepard* v. *New Haven & N. Co.*, 45 id. 54.

HALL, J. The substance of the plaintiff's reasons of appeal is that the court erred in deciding, upon the facts found, that the defendant was not guilty of negligence, and that the plaintiff was entitled to recover only nominal damages. In support of this claim he cites *Wilson* v. *Willimantic Linen Co.*, 50 Conn. 433, 469; *McElligott* v. *Randolph*, 61 id. 157, and other authorities, which lay down the general rule of law that it is the duty of employers to use ordinary care to provide for their employees safe places in which to work and safe appliances with which to perform their work. An examination of the record shows that the principle stated in these cases cannot avail the plaintiff in this action.

The particular acts which it is said the defendant negligently failed to perform, in order to render the place where the plaintiff was working reasonably safe, were the testing of the poles which were being removed, and the supporting of those which were found to be insecure, before the linemen

were ordered to work upon them. The complaint avers that it was the duty of the defendant to so inspect and support the poles, and set forth, as the facts upon which such duty is predicated, that " it was a rule and custom of said defendant company, that whenever an old line of poles was being supplanted by new poles, to have said old poles tested at their base for the purpose of ascertaining whether or not they were rotted and unsafe or dangerous in any way for a lineman to climb . . . for the purpose of removing cross-arms or wires from the same; and in case any of said poles were found to be rotted at the base, to guy the same with wires or ropes to prevent them from falling while the linemen were at work . upon the same; that said rule and custom was known to the plaintiff, and he supposed and believed that said pole had been properly tested by the defendant company before ordering him to climb the same, . . . and that plaintiff had no knowledge that said pole was rotted and defective at its base; that the defendant wholly failed to test said pole as had been its custom and rule prior to that time; . . . that said pole was not guyed by wires or ropes in any way, . . . and that the defendant knew, or by the exercise of due care could have known, that said pole was rotted at its base, and that the same was incapable of sustaining any weight upon it."

There are no facts stated in the complaint which indicate that any special mechanical skill was required to discover the defect in the pole, or that the linemen, of whom the plaintiff was one, were not competent persons to inspect and test the poles; or that any of the officers or other employees of the defendant possessed superior qualifications or had better means or opportunities than the plaintiff to ascertain whether the condition of the old poles was such as to render it safe for the workmen to climb them.

The plaintiff made no examination of the base of the pole which fell. He knew that it was not guyed or supported in any manner. He says that by the exercise of ordinary care its decayed condition could have been detected, but that from his knowledge of the rule and custom of the defendant to inspect and secure the old poles before linemen were sent to

work upon them, he believed that this pole had been properly tested and found to be safe, and for that reason made no examination himself. The complaint makes these facts the basis of the defendant's alleged liability.

As the testing and supporting of the old poles, from the nature of the work, might, either by the terms of the contract of employment or from other facts and circumstances, have been either a duty of the employer or one of the duties of the plaintiff, and as the plaintiff could not in an action at law recover compensation for an injury resulting from his own negligent failure to perform a duty which he was employed to perform, it was essential to the plaintiff's case that he should set forth in his complaint the facts showing why this duty devolved upon the defendant, and why the exercise of due care did not require the plaintiff to examine the pole in question.

Whether in this case the plaintiff's injury resulted from his own or from the defendant's negligence, depended therefore upon the truth or falsity of these averments; and the determination of the question of whether it was the rule and custom of the defendant, as alleged, to inspect and secure the old poles before they were climbed by the linemen, or whether it was one of the duties of the linemen to themselves test the poles and if found unsafe to secure them, became decisive of the plaintiff's alleged right to rely upon his belief that the poles had been tested by the defendant and found to be safe.

These allegations of fact, upon which the averments of duty and of negligence upon the part of the defendant depend, were contested upon the hearing, and having been decided, as appears by the finding, adversely to the plaintiff, the question of negligence has thus been determined as a question of fact.

The trial court has found that it was not the rule and custom of the defendant to inspect and test the poles, but that it was the rule and custom, in this branch of the work, that " each lineman should look out for his own safety in climbing poles; " that each lineman should inspect and test the poles for himself and judge of their safety, and that suitable appliances

were at hand for testing and securing poles.    That the plaintiff knew this rule and understood that testing and inspecting were a part of his duties, must be presumed from the fact that he was a lineman of fourteen years' experience, and in that capacity had formerly been in the employ of the defendant.

The finding of the trial court is thus conclusive upon the question of negligence.    It shows that the plaintiff, with a knowledge, when he was ordered to climb the pole in question, that it was the duty of no one but himself to decide whether it was safe, and that if he doubted its safety that he was at liberty to support it by appliances furnished by the defendant for that purpose, chose rather to rely upon the safe appearance of the pole and the assurances of his fellow-workmen, and to take the risk of the pole being sound, without making a proper examination himself.    If the accident occurred from the negligence of any person it was through the plaintiff's own fault.    He was the person employed by the defendant to examine the poles and see that they were safe to work upon.    As he was able to perform both the work of inspecting and climbing, the defendant ought not to be required to employ some other person than the linemen to test the poles.

We have no occasion, upon the facts found, to consider whether the foreman Phelps was a fellow-servant of the plaintiff, a question discussed in the briefs of counsel.    The accident did not occur from the negligence of Phelps.    It is true he directed the plaintiff to climb the pole, and in answer to the latter's inquiry truthfully said, as might any other lineman who had tested the pole for himself, that he had been up the pole, and expressed his opinion that it was safe.    But the plaintiff knew that it was not a part of the duty of the foreman to instruct an experienced lineman as to the safety of a pole he was about to climb; and from the facts found we must assume that although he knew that in obedience to the order of the foreman he was required to do the work upon the pole, yet he was to rely upon his own judgment in determining whether it was safe to climb it without testing it or

supporting it, and that it was his right to secure the pole before climbing it if he doubted its safety.

It cannot be laid down as a proposition of law, as seems to be claimed by plaintiff's counsel, that the linemen of telegraph and telephone companies have a right to rely upon the soundness and safety of the poles upon which they are working, and that it is the duty of such companies to inspect and test poles and support such as are insecure, before permitting their linemen to climb them. Whether it is incumbent upon the master or the servant to perform such a duty is usually a question of fact depending upon the terms of the contract of employment, the servant's knowledge of the hazards of the work in which he is engaged, his ability and opportunity to discover the dangers to which he is exposed and to avoid them, and upon other circumstances. Employers have a right to decide how their work shall be performed, and may employ men to work with dangerous implements, and in unsafe places, without incurring liability for injuries sustained by workmen who knew or ought to have known the hazards of the service which they have chosen to enter. *Hayden* v. *Smithville Mfg. Co.*, 29 Conn. 548; *Dixon* v. *Western Union Tel. Co.*, 68 Fed. Rep. 630; *Greene* v. *Western Union Tel. Co.*, 72 id. 250; *Flood* v. *Western Union Tel. Co.*, 131 N. Y. 603; *Cumberland Telephone Co.* v. *Loomis*, 87 Tenn. 504.

In the last named case, which was an action for damages for an injury sustained by the fall of a telephone pole, the trial court charged the jury that the "plaintiff (defendant in error) had a right to assume that the pole upon which he was ordered to work in cutting away the dead wire was safe and suitable, and of sufficient strength to support the wires and cable suspended thereon, together with his weight, and it was not Loomis' duty, when sent to cut away dead wires, to inspect the pole." Upon an appeal from a judgment in favor of Loomis, JUDGE SNODGRASS, in giving the opinion of the Supreme Court with reference to the portion of the charge above quoted, said : " The objection to this is two-fold. First, that it assumes as a matter of fact, and so decides, that Loomis

was not the employee who should have served as 'inspector' for the company, which was a disputed question of fact."

From the facts in the case at bar we are of opinion that the falling of the pole in question was one of the hazards assumed by the plaintiff by his contract of employment, and that the Superior Court committed no error in holding that the defendant was not guilty of negligence, and that the plaintiff was entitled to recover nominal damages only.

There is no error.

In this opinion the other judges concurred.