LOUIS MILLER, Respondent, v. MISSOURI & KAN-
SAS TELEPHONE COMPANY, Appellant.

Kansas City Court of Appeals, February 21, 1910.

1. MASTER AND SERVANT: Negligence: Contributory Negli-
gence: Assumption of Risk: Telephone and Telegraph. Poles:
Servant's Duty to Inspect.   When a telephone company exer-
cises reasonable care in the selection of a pole, and properly
installs it, a lineman sent to the top of such pole to make al-
terations or repairs ordinarily must examine for himself to
ascertain if the pole and its appliances are in a safe condi-
tion and the defendant is not negligent in relying on the
lineman making his own inspection.   A lineman will ordi-
narily be held to have assumed the inherent risks of injury
arising from the natural decay of poles and their appliances,
because such risks are incident to the employment.

2. ————: ————: ————: Right to Rely on Inspection by
Master: Prima Facie Evidence of Negligence.   Where the
master has inspected the pole and assures the servant that it
is safe, and the servant is directed to climb it without being
permitted to examine it for himself, the fall of the pole consti-
tutes *prima facie* evidence of negligence on the part of the
master, and the servant is not guilty of contributory negligence
as a matter of law in relying on the master's assurance of
safety, unless the danger was so obvious and imminent that
a reasonably prudent man in his position would have refused to
encounter it.

3. ————: ————: ————: ————: Instructions.   Plaintiff's
instruction which assumes to cover the whole case should have
submitted to the jury the all important question of whether
plaintiff was not suffered to examine the pole for himself, but
was compelled to rely on defendant's inspection.

Appeal from Pettis Circuit Court.—*Hon. Louis Hoff-
man*, Judge.

REVERSED AND REMANDED.

*George F. Longan* and *Gleed, Hunt, Palmer &
Gleed* for appellants.

(1) Defendant was not negligent. Howard v.
Railroad, 173 Mo. 524; Herington v. Railroad, 104 Mo.
App. 663. (2) The employer is required to use only
reasonable and ordinary care in providing safe appli-
ances and safe places to work. Howard v. Railroad,
173 Mo. 524; Franklin v. Railroad, 97 Mo. App. 473.
(3) The master is not liable for a defect unless he
knew or by the exercise of ordinary diligence should
have known, of the defect. Kelley v. Railroad, 105
Mo. App. 365; Howard v. Railroad, 173 Mo. 524; Frank-
lin v. Railroad, 97 Mo. App. 473. (4) It was plain-
tiff's, and not defendant's duty to inspect the pole. Rob-
erts v. Telephone Co., 166 Mo. 370; Junior v. Power
Co., 127 Mo. 79; Epperson v. Telegraph Co., 155 Mo.
373; Sias v. Light Co., 50 Atl. 554, 73 Vt. 35; McGorty
v. Telegraph Co., 38 Atl. 359, 69 Conn. 635; Tanner v.
Railroad, 62 N. W. 993; Krimmel v. Illuminating Co.,
90 N. W. 336; Saxton v. Telegraph Co., 84 N. W.
109, 81 Minn. 314; Broderick v. Railroad, 77 N. W.
28, 74 Minn. 163; Dixon v. Telegraph Co., 68 Fed. 630;
Greene v. Telegraph Co., 72 Fed. 250; Kellogg v. Tram-
way Co., 72 Pac. (Colo.) 609; McIsaac v. Light Co.,
51 N. E. 524, 172 Mass. 89; Evansville Co. v. Railey,
76 N. E. (Ind.) 548; Cahill v. Hilton, 13 N. E. (N. Y.)
341; Southwestern Co. v. Tucker, 114 S. W. (Tex.)
790. (5) There was no evidence whatever that the
pole was defective. Defendant, therefore, was not neg-
ligent. Meehan v. Railroad (Mo. App.), 90 S. W. 102;
Goodrich v. Railroad, 152 Mo. 222. (6) Plaintiff
had actual knowledge of the danger, if there was any
danger, and therefore assumed the risk and was guilty
of contributory negligence in so doing. He did not
claim that he relied on the inspection and assurance
of the foreman, but expressly stated that he appre-
ciated the danger after he had received the assurance.
Epperson v. Postal Co., 155 Mo. 346; Whaley v. Cole-

man, 113 Mo. 598; Knorpp v. Wagner, 195 Mo. 637; Meyers v. Glass Co., 129 Mo. App. 557; Showalter v. Fairbanks, 88 Wis. 376; McCormick Co. v. Liter, 66 S. W. (Ky.) 761; Goza v. Foundry, 142 Mich. 340; Rohrabacher v. Woodward, 124 Mich. 124; Ladonia Oil Co. v. Shaw, 65 S. W. 693; Spencer v. Worthington, 60 N. Y. Supp. 873; Musser-Sauntry Co. v. Brown, 126 Fed. 141. (7) The first instruction given by the court and the fourteenth instruction requested by defendant and given by the court, are in direct conflict with each other; and said first instruction is erroneous in that it does not cover the question of assumption of risk. Tabler v. Railroad, 93 Mo. 79; Dale v. Railroad, 63 Mo. 455; Moore v. Mill Co., 55 Mo. App. 491. (8) The sixth instruction given by the court was erroneous in that it permitted the jury in assessing the damages to allow for pecuniary loss in addition to damages for pain and suffering, and there was no evidence of pecuniary loss. Smith v. Railroad, 108 Mo. 243; Pryor v. Railroad, 85 Mo. App. 367; Stoetzle v. Sweringen, 96 Mo. App. 592; Waldopfel v. Transit Co., 102 Mo. App. 524.

*W. D. Steele* for respondent.

(1) The servant has a right to rely upon the superior knowledge of his foreman, and even though he knew his employment was dangerous, yet it was the duty of the servant to obey the orders of his foreman, and if injured in so doing the master is liable, unless the danger was glaring and imminent. Burkard v. Rope Co., 217 Mo. 466; Brothers v. Carter, 52 Mo. 376; Lewis v. Railroad, 59 Mo. 508; Gormley v. Iron Works, 61 Mo. 496; McGowan v. Railroad, 61 Mo. 532; Keighan v. Kavanaugh, 62 Mo. 232; Cook v. Railroad, 63 Mo. 403; Dowling v. Allen & Co., 74 Mo. 19; Stephens v. Railroad, 86 Mo. 230; Miller v. Railroad, 109 Mo. 357; Russ v. Railroad, 112 Mo. 53; O'Mellia v. Railroad, 115 Mo. 205; Moore v. Railroad, 85 Mo. 595; Cole

v. Railroad, 183 Mo. 91; Carter v. Baldwin, 107 Mo.
App. 226; Wojtylak v. Coal Co., 188 Mo. 261; Keilty v.
Construction Co., 121 Mo. App. 58; Garard v. Coal
& Coke Co., 207 Mo. 258; Dodge v. Mfg. Coal & C. Co.,
115 Mo. App. 501; Edge v. Railroad, 206 Mo. 417;
Bane v. Irwin, 172 Mo. 317; Curtis v. McNair, 173
Mo. 270; Wendler v. House Furnishing Co., 189 Mo.
502; Kielty v. Construction Co., 121 Mo. App. 63; Fo-
garty v. Transfer Co., 180 Mo. 555; Dodge v. Mfrs.
Coal & Coke Co., 115 Mo. App. 508; Koerner v. Car
Co., 209 Mo. 157. (2) He is a vice-principal who is
entrusted by the master with power to superintend,
direct or control the workmen in his work, and that
for negligence in such superintendence, direction or
control, the master is liable. Hoke v. Railroad, 88
Mo. 360; Smith v. Railroad, 92 Mo. 359; Tabler v.
Railroad, 93 Mo. 79; Russ v. Railroad, 112 Mo. 45; La-
Salle v. Kosta, 190 Ill. 130; Shortel v. St. Joseph, 104
Mo. 120; Keegan v. Kavanaugh, 62 Mo. 230; Stephen
v. Railroad, 96 Mo. 209; Wiley v. Gas Co., 132 Mo.
App. 380; Carter v. Baldwin, 107 Mo. App. 318; Hes-
ter v. Packing Co., 95 Mo. App. 16; Wiley v. Gas Co.,
132 Mo. App. 380.

JOHNSON, J.—Action by a servant against his
master to recover damages for personal injuries al-
leged to have been caused by the negligence of the mas-
ter. The answer, in addition to a general denial, con-
tains the defenses of assumed risk and contributory
negligence. Plaintiff prevailed in the trial court where
the jury returned a verdict for him in the sum of
$5000, and the cause is before us on defendant's ap-
peal.

It is argued by counsel for defendant, with much
earnestness and ability that the demurrer to the evi-
dence should have been sustained and, first, we shall
address ourselves to that argument. The record pre-

sents an irreconcilable conflict between plaintiff and the witnesses for defendant over the salient facts of the case, but in the consideration of the questions presented by the demurrer, the settled rules require us to accord absolute verity to plaintiff's version, since we find the evidence adduced by him to be substantial and not inconsistent with physical facts and law. .

The injury occurred August 27, 1907, in Sedalia, during the employment of plaintiff as a lineman by defendant, a telephone company. Plaintiff, an experienced lineman, well acquainted with the duties and dangers of that vocation, was injured by the fall of a telephone pole, to the top of which he had climbed in the discharge of duty. The pole was in one of defendant's lines and had been in service a long time. It had become so decayed where it entered the ground that it could not sustain the additional weight of plaintiff's body and fell with him to the ground. Defendant had built new lines in Sedalia and was prosecuting the work of removing the old lines which were known by both parties to this controversy to be in bad repair. The pole which fell with plaintiff belonged to one of these old lines and the gang in which he was working was engaged in the work of removing the wires. Plaintiff knew many of the poles were so decayed and rotten at the base that they would not support the weight of a lineman and was aware of the necessity of an examination of each pole before an attempt was made to climb it; but he contends that in the work of dismantling the old lines, the duty of making such examination devolved upon and was performed by the foremen, and that linemen were not given an opportunity to make a sufficient examination of the condition of the poles to protect their safety, but were compelled to rely on the foremen for knowledge of defects discoverable only by a reasonably thorough inspection. Speaking of the duties of the foremen, plaintiff testified: "They go ahead and inspect the poles to see if

they are perfectly safe and see if there are any live wires they have got to contend with, and if they have, they tell all the men to look out for them and examine the poles to see whether they are perfectly safe for them to climb, and then they come back and tell them to go ahead, and then if there are any poles that are dangerous, they either chop them off or don't climb them."

It appears the existence and extent of decay cannot always be known by merely looking at a pole. It must be penetrated or gouged by a sharp instrument, such as an ax or a spur with which linemen are supplied. From the observations plaintiff was able to make, he feared the pole which afterwards fell with him was not safe to climb and expressed his fear to the foreman who had ordered him to climb it. The foreman responded with an order, gruffly and decisively spoken, "Go up there, it is perfectly safe." Plaintiff knew the foreman had inspected the pole and, relying on his judgment and assurance that it was safe, obeyed the command. On the subject of lack of reasonable opportunity allowed him to examine for himself and the compulsion under which he acted, he testified:

"Q. What was there about that pole that Clyde Dunaven (the foreman) knew that you could not have known by making a proper inspection of the same? A. Of course, as assistant foreman he had chances to go along and look at everything, and I was so busy working at something else, and I was just rushed up there and forced up that pole, and I couldn't see just what was wrong with it.

"Q. Was there anything about that pole, Mr. Miller, that you couldn't have ascertained by an inspection? A. Well, if they had let me have time and I could have went back on the line both ways and seen the strain on the pole, I probably could have seen it was dangerous; but me being at work and him coming

and getting me and forcing me right up the pole, I didn't have time to look at the thing, and he told me to go ahead up the pole,—it was perfectly safe.

"Q. And you took his word for it? A. I was supposed to take his word for it or get my time."

Plaintiff adds that he was "leery" of the pole, but thought he could execute the order without risk of imminent danger.

Negligence of defendant thus is alleged in the petition: "That on said 27th day of August, 1907, he was working under the control and subject to the orders of one of defendant's assistant foremen by the name of Clyde Dunaven, and that it was the duty of plaintiff to obey the orders and directions of said assistant foreman; that on said 27th day of August, 1907, said assistant foreman directed plaintiff to climb up one of defendant's telephone poles in the said city of Sedalia, Pettis county, Missouri, for the purpose of taking the wires off of said pole; that said pole was rotten, unsafe and dangerous for him to climb, and that defendant through its agents and servants well knew that fact, or by the exercise of reasonable diligence said defendant or its agents and servants might have known it; that said assistant foreman assured plaintiff that it was perfectly safe to climb up said pole, and that there was no danger whatever of said pole breaking by reason of plaintiff's climbing the same. Plaintiff states that he obeyed the orders of defendant's assistant foreman, and did climb said pole as directed by said assistant foreman to a height of about eighteen feet, when said telephone pole broke off about even with the ground, and the plaintiff was precipitated about eighteen feet to the ground, lighting upon his feet with great force, causing concussion of spinal cord, with resulting congestion of his lower nervous system, and bruising plaintiff's feet, lacerating the tendons and bursting the nerves in plaintiff's heels.

"Plaintiff states it was the duty of defendant to

furnish him a safe and secure place for the performance of his said work, but that the defendant, through its assistant foreman, carelessly and negligently ordered and directed this plaintiff to climb the telephone pole aforesaid, which was dangerous and unsafe, but plaintiff, believing the assurance of said assistant foreman that it was safe to climb said pole, did climb the same, when it broke, causing plaintiff's injuries as aforesaid.

"Plaintiff states that the breaking of said telephone pole as aforesaid and the injuries received by him as aforesaid were not caused by any fault or negligence of this plaintiff, but that plaintiff's injuries were caused by the faults and negligence of defendant's assistant foreman in ordering and directing this plaintiff to climb said pole as aforesaid."

The evidence of defendant presents the facts in an aspect entirely different from that of the foregoing statement, but as we remarked at the outset, it is our duty in passing on the demurrer to the evidence to consider the facts from plaintiff's viewpoint and we do not consider it necessary to encumber this opinion with a recital of defendant's evidence.

In the performance of their duties, linemen are compelled to work at the tops of poles, and it will hardly do to say the company owes a lineman the duty to furnish him a safe pole upon which to work. When the company exercises reasonable care in the selection of a pole, and in its installation in a lead, it discharges its duty, and thereafter, the linemen sent to the top of a pole to make alterations or repairs ordinarily must examine for themselves to ascertain if the pole and its appliances are in a safe condition. A servant always will be held to have assumed the inherent risks of his employment, and it is well settled he cannot hold his master liable for an injury inflicted on him by the very defect he is employed to remedy.

In Roberts v. Telephone Co., 166 Mo. 370, the line-

man who was sent to work at the top of a pole was injured in consequence of the breaking of a crossarm from rottenness. The Supreme Court said: "The plaintiff, therefore, was not only acting as a lineman, but was also an inspector as to this work. He was engaged in the work of repairing the line. It was his duty to look for defects and to remedy them. He had no right to assume that the defendant had previously and properly inspected the line, for if it had it would have known of the defects and have directed the plaintiff and Gates what defects existed and what they should repair. This case is clearly distinguishable from the cases cited and relied on by the plaintiff, in this, that in those cases the servant injured was not charged with the duty of ascertaining and repairing the defects in the appliances, but was using appliances furnished him by the master for use in the ordinary course of his employment, while in this case the plaintiff was charged with the duty and engaged in the work of inspecting and repairing the master's appliances."

In Junior v. Electric Light Co., 127 Mo. 79, cited by defendant, the lineman working on a pole failed to use rubber gloves and was injured by coming in contact with a defectively insulated live wire. Held, "He assumed the risk of handling these wires charged with electricity. The employment was very hazardous and inherently dangerous in its very nature, but he undertook it with knowledge of its dangers, and he was bound to exercise care to avoid the consequences. . . . . Linemen were the only employees of defendant who went on the poles and handled, connected, and repaired the wires thereon and the only employees who had an opportunity to inspect and know the condition of the wires."

The doctrine of these cases was applied by the Supreme Court in Epperson v. Cable Co., 155 Mo. 346.

In Sias v. Lighting Co., 50 Rep. 554 (73 Vt. 35), as in the present case, the lineman was injured by the

fall of a pole which had rotted at the base. The company had decided to remove the pole and the lineman was sent to "strip" it. There was nothing in the appearance of the pole as it stood to indicate that it was unsafe. Its decayed condition could easily have been ascertained by digging a few inches below the surface. Plaintiff climbed the pole without making an examination and so far as he knew, no inspection had been made by the company. Held by the Supreme Court of Vermont: "The defendant contends that the inspection of the pole was a part of plaintiff's duty as a lineman, and that, if he saw fit to climb it without an examination, he took the entire risk. It is impossible to say that it is the duty of the company to furnish the lineman a safe pole upon which to work. The nature of his employment involves the necessity of working upon poles in various stages of decay. He contracts with reference to this necessity, and must be held to assume the risks involved in it. The point of danger is a few inches below the surface, and the condition of the pole can be ascertained only by an examination at that point. The examination is not to determine whether the designated work shall proceed or not, but to determine in what manner it shall proceed. It is auxiliary to the lineman's principal work, can be conveniently made in connection with it, and requires no separate training. It is difficult to conceive of any preliminary work that would be more clearly in the line of the servant's duty. It could hardly be required that a company sending out a gang of men to repair its line should send other men before them to inspect the poles, and determine which could safely be climbed without the taking of precautions."

To the same effect is the decision of the Supreme Court of Errors of Connecticut in McGorty v. Telephone Co., 38 Atl. 359 (69 Conn. 635), where it is said: "If the accident occurred through the negligence of any person, it was through the plaintiff's own fault.

He was the person employed by the defendant to examine the poles, and see that they were safe to work upon. As he was able to perform both the work of inspecting and climbing, the defendant ought not to be required to employ some other person than the lineman to test the poles."

The Supreme Court of Minnesota said in Saxton v. Telephone Co., 84 N. W. 109 (81 Minn. 314): "The fact that the foreman of the work knew that this particular pole was defective and failed to inform plaintiff thereof, is not important. Plaintiff knew and well understood that the poles were being taken down because of their defective condition, and the burden to ascertain the nature of the defects and the dangers incident to the work was assumed by him."

The same court in Broderick v. Railroad, 77 N. W. 28 (74 Minn. 163), in a case where a lineman was injured by the fall of a decayed pole, applied the rule that "A servant cannot recover for injury caused by the very defect he was employed to repair."

In McIsaac v. Lighting Co., 51 N. E. 524 (172 Mass. 89), another case of injury caused by the fall of a rotten pole, the Supreme Judicial Court of Massachusetts held: "We think that one of the most common and obvious of these (risks) in reference to which both he and his employer must have been presumed to have contracted when he entered the defendant's service, was the risk that some pole of uncertain age might break and fall when a lineman was working upon it, if he did not take measures to ascertain its condition before going upon it. All the evidence tends to show that, in the ordinary course of business, the linemen, who are often expected to work alone without supervision, as the plaintiff was working at the time of the accident, would examine the poles for themselves, so far as they considered it necessary to do so for their safety. They easily could make any necessary tests to ascertain the condition of the poles as to soundness,

without the aid of special inspectors, and from their knowledge of common affairs could judge whether the pole was safe to go upon. . . . We are of opinion that there is no evidence that the risk of falling on account of the weakness of old poles was not a risk of the business, which the plaintiff assumed by his contract to work upon such poles. As between the plaintiff and the defendant, the defendant was under no obligation to inspect the poles to see whether they were decayed, and there was, therefore, no evidence of negligence on the part of the defendant."

Reference could be made to numerous other cases of like import but those from which we have quoted are sufficient to establish the rule that a telephone or telegraph company in the discharge of its duty to furnish its servants a reasonably safe place in which to work is not bound, before sending a lineman to work on a pole which has been in service long enough to be affected by decay to send another servant to inspect the pole, but ordinarily is justified in relying on the lineman making his own inspection; and that where the lineman is given reasonable opportunity so to do, he must examine for himself if he would remain within the bounds of reasonable care. Given such opportunity by the master, the lineman assumes the risks of injury arising from the natural decay of the poles and their appliances because such risks are inherent in the employment.

But the evidence of plaintiff distinguishes his case from those to which we have referred in a respect most vital. He was not permitted by defendant to inspect the pole for himself but was forced by the orders of the foreman to climb it without such examination, or else to lose his job. The foreman, who was defendant's vice principal, performed the duty of inspection, and compelled plaintiff to rely on his performance of that duty. There is nothing in the authorities to preclude a master from taking to himself the discharge of a

duty that ordinarily would devolve upon the servant, and the assumption by defendant of the burden of inspection made the performance of that duty a part of the master's fundamental duty to exercise reasonable care to furnish the servant a reasonably safe place in which to work. The fact that the pole fell under the weight of plaintiff is *prima facie* evidence of negligence in the inspection, and such evidence supports the allegation of the petition that "plaintiff's injuries were caused by the fault and negligence of defendant's assistant foreman in ordering and directing this plaintiff to climb said pole as aforesaid."

We do not sanction the view that plaintiff was guilty in law of contributory negligence. The evidence presents his conduct as an issue for the jury to determine. While it is true the casual inspection he was able to make caused him to doubt the safety of the pole, still, knowing that the foreman had made an inspection, he was justified in relying on the assurance of safety given him by the foreman, unless the danger was so obvious and imminent that a reasonably prudent man in his position would refuse to encounter it. There is room in the evidence for a reasonable inference that the danger was not of the character just described and, as we have said, the question was for the jury to decide. The demurrer to the evidence was properly overruled.

The first instruction given at the request of plaintiff is as follows: "The court instructs the jury that if they believe from the evidence that the defendant company, through its assistant foreman, directed plaintiff to climb a telephone pole in the performance of his duties as such employee, and that said telephone pole was at the time rotten, unsafe and dangerous, and that defendant knew the unsafe condition of said pole, or by the exercise of reasonable diligence the defendant might have known that said pole was unsafe, and that in consequence of such unsafe condition of said

pole the plaintiff, while exercising ordinary care and caution and without any negligence, was injured while in the performance of his duties, then the jury should find for the plaintiff."

Defendant's objection to this instruction is well grounded. The hypothesis on which a verdict is directed omits the all important fact that plaintiff was not suffered to examine the pole for himself, but was compelled to rely on defendant's inspection. As we have shown, plaintiff is not entitled to recover except on the theory that he was relieved of the duty of inspection. An instruction which assumes to cover the whole case and directs a verdict for the plaintiff, to be free from prejudicial error, must contain in its hypothesis all of the facts elemental to the cause of action. We do not find the error in this instruction, which we class as highly prejudicial, cured by instructions given at the instance of defendant. Plaintiff's instruction on the measure of damages is subject to the objection urged against it by defendant, but since the case must be remanded on account of the error in the first instruction, we shall not discuss the error last mentioned, as we assume that plaintiff, having his attention called to it, will not repeat it.

The judgment is reversed and the cause remanded. All concur.