. (Decided 15th May, 1885.)

JOHN B. T. SELLMAN *vs.* JOSHUA SELLMAN, and others.

*Equity pleading—Right to demur—Parties—Children and
Grandchildren of a Living Ancestor—Heirs apparent.*

To entitle a party to sustain a bill, he must show an interest in
the subject of the suit, or a right to the thing demanded, and
proper title to institute the suit concerning it; and if such inte-
rest or right to sue be not fully shown by the bill itself, the
defendant may demur.

The children and grandchildren of a living ancestor cannot claim a
right or maintain a suit in respect to the property of that ancestor,
while their interest in such property is merely in expectancy, de-
pending upon a future inheritance that by possibility may never
occur.

The principle is, both at law and in equity, that no one is entitled to
be recognized as heir until the death of the ancestor or person from
whom the descent may be cast; and the fact that such ancestor or
other person may be alleged and admitted to be *non compos mentis,*
or otherwise incapable of managing his estate, makes no exception
to the general principle.

The children of a grantor cannot maintain a bill in their own
names, as parties complaining, against the grantor himself and his
grantee, for the purpose of impeaching and having set aside a con-
veyance, upon the ground of fraud and undue influence, and be-
cause such conveyance would operate to defeat their future inherit-
ance.

APPEAL from the Circuit Court for Carroll County, in
Equity.

This appeal was taken from an order of the Circuit Court dissolving the injunction previously granted, sustaining the demurrer to the bill and dismissing the bill. The case is stated in the opinion of this Court.

The cause was argued before ALVEY, C. J., YELLOTT, ROBINSON, IRVING, and BRYAN, J.

*Wm. P. Maulsby,* for the appellant.

*Charles B. Roberts, Attorney-General,* for the appellees.

ALVEY, C. J., delivered the opinion of the Court.

The bill in this case was filed by the children and grandchildren of Joshua Sellman against Joshua Sellman and Jane Sellman, his wife, and others, for the purpose of having two deeds of conveyance declared void, as having been procured from the said Joshua Sellman by fraud and undue influence. In effect the bill charges that Joshua Sellman, the grantor, was, at the date of those deeds, a very old and infirm man, and greatly subject to the control and undue influence of a comparatively young wife, whom he had married a few years previous, she being his second wife, and not the mother of his children. It is charged that the grantor was, at the time of the making of those deeds, and still is, by reason of old age and other infirmities, of feeble and imbecile mind, and was " without capacity to dispose of his property with judgment and discretion;" and being in that weak and infirm state, he was made a victim to the fraud and undue influence of his designing wife, and was induced to make the deeds in her favor, which the complainants, by their bill, seek to have vacated. It is alleged that the wife procured the deeds to be made by the husband with the fraudulent intent and purpose of investing herself with the property of her husband, " and of depriving his law-

ful heirs, on his death, of their just participation in his estate." The grantor is still living, and he and his wife are made defendants to the bill; and the complainants are parties who would be the heirs-at-law of the grantor if he were dead. The grantor has never been declared to be of unsound mind by inquisition, and the present bill does not ask for or contemplate any proceeding for having him so declared. The object of the bill is simply to have the deeds declared void, and the proposed sale of the property enjoined.

The defendants, Joshua Sellman and wife, and Reifsnider, the trustee to whom one of the deeds was made, demurred to the bill, and the demurrer was sustained and the bill dismissed, upon the ground that the complainants had no such right or interest in the property as would entitle them to maintain a bill for the relief prayed. And this Court fully concurs in that opinion.

It is a fundamental principle of equity pleading that, to entitle a party to sustain a bill, he must show an interest in the subject of the suit, or a right to the thing demanded, and proper title to institute the suit concerning it; and if such interest or right to sue be not fully shown by the bill itself, the defendant may demur. *Mitf. Eq. Pl., top pages* 272, 329; *Sto. Eq. Pl., secs.* 728, 730. And this being the requisite in pleading, the complainants, upon the maxim *nemo est hœres viventis,* can have no standing in Court; for that maxim is of equal force in equity as at law. The children and grandchildren of a living ancestor cannot claim a right or maintain a suit in respect to the property of that ancestor, while their interest in such property is merely in expectancy, depending upon a future inheritance that, by possibility, may never occur. The principle is, both at law and in equity, that no one is entitled to be recognized as heir until the death of the ancestor, or the person from whom the descent may be cast; and the fact that such ancestor or other person may be alleged

and admitted to be *non compos mentis,* or otherwise incapable of managing his estate, makes no exception to the general principle. In deciding the case of *Dursley vs. Fitzhardinge,* 6 *Ves.,* 260, Lord ELDON stated the principle as absolute and without qualification in reference to the condition of the living ancestor. He said: "The case of *Smith vs. The Attorney-General,* went upon this; that the next of kin of the lunatic had no interest whatever in the property. Put the case as high as possible; that the lunatic is intestate; that he is in the most hopeless state, a moral and physical impossibility, though the law would not so regard it, that he should ever recover, even if he was *in articulo mortis,* and the bill was filed at that instant, the plaintiff could not qualify himself as having any interest in the subject of the suit." And referring to what was said in the case mentioned, the Chancellor proceeded: "Lord Chief Justice DE GREY said, that at law the heir-apparent cannot have the writ *de ventre inspiciendo* in the life of his ancestor; as for that purpose he must be *verus hæres.* If the ancestor was in a fever, a delirium, having made no will, and it was not possible for him to recover, still the law would look upon him as mere heir-apparent, having nothing but an expectation, which is different from an expectancy in the legal sense, and as having no interest whatever upon that ground. In *Smith vs. The Attorney-General* (in *Chancery,* 1777,) it was held, that the bill would not lie." And to the same effect, and in terms equally strong, was the principle stated by the same Lord Chancellor in the case of *Allan vs. Allan,* 15 *Ves.,* 136. The same principle, in terms equally strong and unqualified, is laid down by the text-writers, in treating of the interest in parties that will enable them to maintain suits in respect to property. *Sto. Eq. Pl., sec.* 301; 2 *Hovenden on Frauds,* 493.

We have, however, been referred to the case of Colegate D. Owens, in 1 *Bland,* 370, as a precedent for this

proceeding. But that case is wholly unlike this, and furnishes no warrant whatever for what is attempted here. There the bill was filed by the grantor herself, asking that a deed executed by her. should be vacated, upon the ground of fraud and imposition practiced in obtaining it, the complainant alleging herself to have been, at the time of making the deed, in such condition of mental disorder as rendered her incompetent to dispose of her property. And having been induced to give an order for the dismissal of her bill, when she was not in a condition of mind to know what she was doing, the Chancellor, upon being satisfied of the facts, ordered the bill to be reinstated, and that the cause should be proceeded with by the solicitors of the complainant, in her name and for her benefit, as the real party complaining; and so the cause was conducted to the end. That case, therefore, is no authority for allowing the children of the grantor to file a bill in their own names, as parties complaining, against the grantor himself and his grantee, for the purpose of impeaching and having set aside a conveyance, upon the ground of fraud and undue influence, and because such conveyance would operate to defeat their future inheritance. If the grantor is really imbecile or of unsound mind, whether the effect of old age or other cause, so that he is incapable of managing his affairs, he should be so declared by proper proceeding taken for that purpose, to the end that some proper person be appointed to take charge of his person and estate; and that person would be his representative in all legal proceedings. But to allow the children or grandchildren of the grantor to initiate proceedings in their own names against the grantor himself, or, in his life-time, against those claiming under him, to contest the validity of his act in disposing of his estate, no matter upon what ground the conveyance might be assailed, would not only be novel in principle, but would inevitably lead to most pernicious consequences, tending to disturb and often

imbitter the relations of parent and child. It is therefore a principle of the law, founded in great wisdom, that it is only after the death of the ancestor that his children are entitled to the *status* of very heirs, which will enable them to assert a right to property derived through him by inheritance. As heirs apparent simply they have no such right, and therefore no right to maintain a bill such as the present. The decree appealed from must be affirmed with costs.

