STATE, Use of Gladys Fisher et al. *v.* CHESAPEAKE
& POTOMAC TELEPHONE COMPANY.

[No. 11, April Term, 1932.]

*Decided May 20th, 1932.*

Appeal from the Circuit Court for Wicomico County (BAILEY and DUER, JJ.).

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*F. W. C. Webb* and *James L. Benjamin,* with whom were *Carroll E. Bounds, William W. Travers, Woodcock & Webb,* and *Miles & Bailey,* on the brief, for the appellants.

*F. Leonard Wailes* and *W. Mason Shehan,* with whom were *Shehan & Marshall* on the brief, for the appellee.

URNER, J., delivered the opinion of the Court.

By a demurrer, which the trial court sustained, the defendant corporation questioned the sufficiency of a declaration which alleged, in effect, that, as the owner and operator of a line of telephone poles and wires in Somerset County, it entered into an agreement with a firm of contractors for certain alterations, improvements, and additions to its line; that, in the course of the work required by the contract, the

husband of one of the personal plaintiffs, upon whom she and his father, another plaintiff, were dependent, was engaged as a lineman in the employ of the contractors in the performance of his duty at or near the top of one of the defendant's poles, and was fatally injured by the fall of the pole in consequence of its decayed and defective condition, of which the employee and the contractors were not aware, and which they could not observe by ordinary care, but which the defendant knew or should have known, in the exercise of due care for the safety of employees required to ascend it in the course of their duty, and negligently failed to warn the contractors and their employees of its condition; and that the corporate plaintiff, as insurer, is obligated to pay an award by the State Industrial Accident Commission to the dependents of the deceased employee under the Workmen's Compensation Law of Maryland. The suit is brought under the provision of that act authorizing action by an injured employee, or by his dependents in case of his death from a compensable accident, and by the insurer, to enforce the legal liability of any person other than the employer to pay damages on account of the injury or death for which compensation under the act is payable. Code, art. 101, sec. 58.

In support of the demurrer it was argued that the terms of the agreement between the defendant and the contractors should have been alleged in the declaration. For the purpose of this suit the reference to the contract is adequate. It was appropriately averred as the occasion for the deceased lineman's rightful presence on the defendant's property at the time and place of his injury, and it is described to the extent necessary to show that he was acting as an employee of independent contractors. Its terms and effect were not required to be more particularly stated.

It is said that the defendant is not in the position of a "person other than the employer," and is therefore not amenable to this action under the provision already cited. But the adoption of that theory is prevented by the tenor of the declaration and by prior decisions of this court. It is

alleged that the injured lineman was the employee of a contractor to whom the defendant had committed "certain alterations, improvements and additions" to its telephone line. In the brief for the defendant, on appeal, the declaration is construed as showing that the contractors were "intrusted" with the "entire work" therein described. Since the averments definitely exclude the theory that the lineman may have been an employee of the defendant corporation, the conclusion must follow, on demurrer, that the defendant is in the situation of a person other than the contractors by whom he is alleged to have been independently employed. This view is fully supported by the decisions in *Bethlehem Steel Co. v. Variety Co.,* 139 Md. 313, 115 A. 59, 31 A. L. R. 1021, and *Bethlehem Steel Co. v. Raymond Concrete Pile Co.,* 141 Md. 67, 118 A. 279.

It is contended that the declaration should have been more specific in its description of the condition which is alleged to have made the pole unsafe, and it is said to be hard to conceive how such a condition could have existed and have been ascertainable by the defendant and yet have escaped the observation of the lineman and the contractors if they were exercising due care. The opportunity of a lineman to learn the condition of a pole which his duty requires him to ascend is ordinarily equal to that of any of the owner's employees who may be detailed for its inspection. In *Consolidated Gas Co. v. Chambers,* 112 Md. 324, 334, 75 A. 241, 244, it was said to be the general rule, to be deduced from the cases there cited, that "when the employer has no independent system of inspection of poles, cross-arms, steps, etc., and the lineman has no reason to believe that such inspection is made, he had no right to rely on the employer for such inspection, but must make such tests himself as may be necessary to ascertain whether it is safe to go upon them, and cannot hold the employer responsible for injuries received by him by such poles, cross-arms, or steps giving way, unless there was some defect in them when they were originally placed in position, or the employer had some knowledge of the defect, which was not communicated to the lineman, provided, of course, the line-

man is not such an inexperienced person as is entitled to be instructed as to the danger." The opinion referred to some of the decisions on the subject as follows (pages 333, 334 of 112 Md., 75 A. 241, 243): "As was said in *McIsaac v. Northampton Lighting Co.,* 172 Mass. 89, 51 N. E. 524, in speaking of linemen: 'They easily could make any necessary tests to ascertain the condition of the poles as to soundness without the aid of special inspectors, and, from their knowledge of common affairs, could judge whether the pole was safe to go upon.' And again in that case it was said the plaintiff 'must have known that it would be inexpedient and impracticable to have a man or company of men to go and examine each pole upon which a lineman was about to work, to see whether it would sustain the strain which the work would put upon it.' In *Sias v. Con. Lighting Co.,* 73 Vt. 35, 50 A. 554, it was said, in speaking of a lineman's examination of a pole before going on it: 'It is auxiliary to the lineman's principal work, can be conveniently made in connection with it, and requires no separate training. It is difficult to conceive of any preliminary work that would be more clearly in the line of the servant's duty. It could hardly be required that a company sending out a gang of men to repair its line should send other men before them to inspect the poles, and determine which could safely be climbed, without the taking of precautions.' In *McGorty v. S. N. E. Tel. Co.,* 69 Conn. 635, 38 A. 359, referred to in *Stewart & Co. v. Harman,* 108 Md. 451, 70 A. 333, it was said: 'It cannot be laid down as a proposition of law, as seems to be claimed by plaintiff's counsel, that the linemen of telegraph and telephone companies have a right to rely upon the soundness and safety of the poles upon which they are working, and that it is the duty of such companies to inspect and test poles, and support such as are insecure, before permitting their linemen to climb them. Whether it is incumbent upon the master or the servant to perform such a duty is usually a question of fact, depending upon the terms of the contract of employment, the servant's knowledge of the hazards of the work in which he is engaged, his ability and opportunity to discover the dangers

to which he is exposed and to avoid them, and upon other circumstances.' "

The principle which governed the decision in *Consolidated Gas Co. v. Chambers* had previously been applied in *Md. Telephone Co. v. Cloman,* 97 Md. 620, 55 A. 681; the injury to the lineman in each of those cases having resulted from the breaking of a defective cross-arm. While the defendants in those cases were the employers of the injured linemen, the controlling principle is the same in a case like the one now under consideration, where the work in progress at the time of the accident had been delegated to contractors by the defendant owner.

There is no statement in the present declaration that the defendant employed any system of inspection upon which the lineman relied as an assurance that the pole was safe for his ascent. It is not charged that the defendant failed to warn the lineman of a defective and unsafe condition of which it was actually aware, the assertion being simply that the defendant knew or should have known, in the exercise of due care, that such a condition existed. Nor is there any explanation as to why the decay in the pole was not discoverable by the lineman in the exercise of due care, if the same degree of care would have revealed it to an inspector. In these respects the declaration, in our opinion, is insufficient. It is not sustainable consistently with the rule of law applied in the former decisions of this court to which we have referred.

Except for the deficiencies just indicated, we consider the declaration proof against demurrer. But there has been no suggestion that it could be amended in those particulars with due regard to the facts. The demurrer was sustained by the trial court after the declaration had been amended twice, and judgment for the defendant was entered after the plaintiff had declined to make any further amendment. Under these circumstances, there appears to be no occasion to remand the case in order that another opportunity to amend may be afforded. *Frisch v. Baltimore,* 156 Md. 310, 144 A. 478.

*Judgment affirmed, with costs.*