HUNGERFORD ET UX. *v.* HUNGERFORD

[No. 5, September Term, 1960.]

318

*Decided October 25, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Samuel J. DeBlasis,* for appellants.

*Jerrold V. Powers,* with whom were *Sasscer, Clagett &
Powers* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

This case comes to this Court on the pleadings. The ap-
peal is from an order sustaining a demurrer to an amended
bill or petition without leave to further amend.

The original bill was filed in February of 1959. The alle-
gations of the amended bill are substantially as follows:

In January or February of 1922 Henry A. Hungerford III
(Henry), who was a remainderman in common with a brother
(Nathaniel Hungerford) of a tract of land in the Oxon Hill

District of Prince George's County, orally agreed to convey a part of the tract and a right of way to William H. Hungerford (William), another brother, but not a remainderman, in exchange for the latter's promise to perform certain labor or work for the life tenant, who was the father of all the brothers. William took actual possession of the part in question forthwith, constructed a dwelling on it and performed the work promised.

In 1944 Henry became the sole record owner of the whole tract, but the bill did not state from whom or what interests were then acquired. He died in 1957 leaving his wife (Susie E. Hungerford), the defendant herein, as his sole heir and next of kin, and the present sole record owner of the whole tract.

William and his wife (Viola Hungerford), the plaintiffs herein, made repeated demands on Henry during his lifetime and the defendant after his death to execute and deliver to the plaintiffs a deed for the property in question, but Henry repeatedly refused to convey and the defendant, since the death of her husband, has refused and still refuses to execute a conveyance of the property.

There were also allegations that the plaintiffs have been in continuous possession of the property since 1922, and that such possession had been "actual, notorious, visible, undisturbed, hostile, peaceful and adverse."

At the oral argument we were informed that Henry and his wife were not married until after the agreement to convey had been entered into, and were further informed that the life tenant had died in 1935.

The plaintiffs sought to have the title to the property "quieted and confirmed" (apparently on the ground that a fee simple title had been acquired by adverse possession) as well as injunctive relief restraining the defendant from asserting any claim thereto, and, in the alternative, also sought specific performance of the oral agreement to convey.

The defendant, among other reasons for demurring, asserted that the plaintiffs had been guilty of laches. It was on this ground that the demurrer was sustained. No motion to amend a second time was made, and the chancellor allowed none.

Whether the ruling on the demurrer was correct involves two issues: (i) does the bill or petition, on its face, permit application of the doctrine of laches? and (ii) does the plaintiffs' allegation of adverse possession entitle them to any relief?

### (i)

Equity will, of course, as the plaintiffs contend, specifically enforce an oral contract to convey real property where the contract is affirmatively established by clear and convincing evidence and the promise has been fully performed by the party seeking to enforce the contract. *Mannix v. Baumgardner*, 184 Md. 600, 42 A. 2d 124 (1945), and cases cited; 2 Williston, *Contracts* (rev. ed.), § 494; 4 Pomeroy, *Equity Jurisprudence* (5th ed.), § 1409; Miller, *Equity Procedure*, § 700. But in this case, even if we assume as the demurrer admits that there was an oral contract to convey and that the services promised as consideration for the conveyance had been dutifully performed, it is apparent that the doctrine of laches was correctly applied to the claim for specific performance. Since both limitations and laches may be raised by demurrer, the real issue here is whether the defense of laches is apparent on the face of the bill. A defense based on matter which does not appear on the face of the bill must be made by answer, but a defense appearing on the face of the bill may be made either by demurrer or answer. Maryland Rule 371 a, b. This Court has repeatedly held that the defense of limitations or laches may be made in equity by demurrer where it can be seen that the bar applies and where the stated facts are not sufficient to relieve the bill or petition from the operation of limitations or laches. See, for instance, *Belt v. Bowie*, 65 Md. 350, 4 Atl. 295 (1886); *Campbell v. Burnett*, 120 Md. 214, 87 Atl. 894 (1913); *McKenney v. McKenney*, 214 Md. 397, 135 A. 2d 423 (1957). So far as the claim for specific performance is concerned, there is nothing on the face of the bill to relieve it from the application of laches. The plaintiffs allege that the defendant's husband acquired the entire title in 1944, yet they failed to explain why they waited for fifteen years to bring this action for specific performance.

Only two requisites are necessary in order to invoke the

doctrine of laches. There must have been some lapse of time during which the plaintiff failed to assert his rights and the lapse must have caused some prejudice to the defendant. *Clarke v. Brunk,* 189 Md. 353, 55 A. 2d 919 (1947); *Kaufman v. Plitt,* 191 Md. 24, 59 A. 2d 634 (1948); *Rettaliata v. Sullivan,* 208 Md. 617, 119 A. 2d 420 (1956); *Akin v. Evans,* 221 Md. 125, 156 A. 2d 219 (1959). That the death of a material witness to the transaction may constitute the necessary prejudice is well recognized. In *Akin* the delay was only eighteen months during which time a principal witness had died. Here, the filing of suit was delayed for a period of fifteen years and one of the contracting parties, the only person who could refute the plaintiffs' claim, died two years before specific performance was sought. Since the plaintiffs offered no explanation for the delay in the enforcement of their rights, the demurrer was sustainable on the ground of laches.

(ii)

On the question of adverse possession—since the bill is insufficient in its allegations with respect to this claim—it is impossible to determine whether there is merit in the plaintiffs' contention that their allegation of adverse possession was sufficient reason for overruling the demurrer. The bill alleged that adversary possession began to run in 1922, but that was not possible under the limited allegations of the bill, though it may have begun on some later date not disclosed by the pleadings.

The rule is that the statute of limitations does not run against a remainderman until his interest becomes possessory. *Timanus v. Dugan,* 46 Md. 402 (1877); *Preston v. Evans,* 56 Md. 476 (1881); *Greenbaum v. Harrison,* 132 Md. 34, 103 Atl. 84 (1918); *Columbia Bldg. Co. v. Cemetery of Holy Cross,* 155 Md. 221, 141 Atl. 525 (1928). Since the remaindermen had no right of entry so long as the life tenant lived, it is clear that adversary possession could not, under any circumstances, begin to run against them until the termination of the life estate. *Greenbaum v. Harrison, supra.* On the other hand, had the bill alleged the date of the death of the life tenant and such other facts as might be necessary or perti-

nent to certainly establish a claim of adverse possession, it is possible the bill might then have shown that the alleged adversary possession began after the remaindermen had acquired possessory interests. In that event, the demurrer, as to this claim, might not have been sustainable.

In the circumstances here present, since it appears "that the purposes of justice will be advanced by permitting" such further amendments of the pleadings as may be expedient or desirable, we shall, pursuant to Maryland Rule 871 a, order that this case, in so far as the adverse possession claim is concerned, be remanded to the lower court for further proceedings instead of entering a final order affirming or reversing the order from which the appeal was taken. For the most part, the provisions of Rule 871 a, *supra,* were derived from section 42 of Article 5 of the Code of 1951 (Appeals from Courts of Equity). The statutory source has been repealed, and the present procedural rule, a general one, is now applicable to both law and equity cases. The authority thus conferred on this Court has been exercised many times. In *Hart v. Wagner,* 184 Md. 40, 40 A. 2d 47 (1944), where the case was remanded so that the bill, which was lacking in "fullness and definiteness of expression," might be amended, we had occasion to remark at p. 50: "The principle and spirit of equity would be better served, * * * by applying this statutory procedure [Code (1939), Art. 5, § 42] * * * than by sustaining the decree, summarily and finally dismissing the bill, without leave to amend, and without even attaching to the dismissal the reservation 'without prejudice' to the rights, if any, of the complainant."

See also, among many other equity cases, *Welch v. Coglan,* 126 Md. 1, 94 Atl. 384 (1915), *Gittings v. Baltimore,* 95 Md. 419, 52 Atl. 937 (1902), and *Commercial Bldg. & Loan Ass'n of Richmond, Va. v. Robinson,* 90 Md. 615, 45 Atl. 449 (1900), which were remanded for amendments of the bill or petition under the former statutory authority. And see *Landay v. Cohn,* 220 Md. 24, 150 A. 2d 739 (1959), which was remanded to permit amendment of the declaration under the present rule. Cf., however, among numerous other cases, *McGaw v. Gortner,* 96 Md. 489, 54 Atl. 133 (1903), and *Smith*

*v. Hooper,* 95 Md. 16, 51 Atl. 844 (1902), in which applications for remand were denied primarily because the amendment would have constituted an entirely new action. Also compare *State to Use of Fisher v. Chesapeake & Potomac Tel. Co.,* 162 Md. 572, 160 Atl. 437 (1932), in which remand for further amendment was refused because the declaration had been twice amended and judgment had been entered after the plaintiff had declined to make any further amendment.

Upon remand such further proceedings shall be had—as to the claim of adverse possession—as may be necessary. However, the opinion and mandate of this Court shall be conclusive as to the claim for specific performance of the oral agreement to convey.

> *Order sustaining demurrer in so far as claim for specific performance is concerned is affirmed; but the case is remanded without affirmance or reversal to permit further amendment of the bill and for further proceedings with respect to the claim of adverse possession; appellants to pay costs.*