ROCKSHIRE CIVIC ASSOCIATION, INC. ET AL. *v.*
THE MAYOR AND COUNCIL OF
ROCKVILLE ET AL.

[No. 1094, September Term, 1975.]

* * *

ROCKSHIRE CIVIC ASSOCIATION, INC. ET AL. *v.*
CITY OF ROCKVILLE PLANNING
COMMISSION ET AL.

[No. 1096, September Term, 1975.]

*Decided June 9, 1976.*

The causes were argued before MORTON, LOWE and MASON, JJ.

In Appeal No. 1094, submitted on brief by *Joseph A. Lynott, Jr.,* and *Lynott & Craven, P.A.* for appellants.

In Appeal No. 1094, submitted on brief by *Roger W. Titus, City Attorney,* and *Paul T. Glasgow, Assistant City*

*Attorney* for appellees The Mayor and Council of Rockville. Submitted on brief by *Stanley J. Nadonley, John Burgess Walsh, Jr.,* and *Mannes, Nadonley & Townsend* and *Aaron L. Handleman, David E. Betts* and *Betts, Clogg & Murdock* for other appellees.

In Appeal No. 1096, *Joseph A. Lynott, Jr.,* with whom were *Lynott & Craven, P.A.* on the brief, for appellants.

In Appeal No. 1096, *Paul T. Glasgow, Assistant City Attorney,* with whom was *Roger W. Titus, City Attorney,* on the brief, for appellees City of Rockville Planning Commission and The Mayor and Council of Rockville. *Stanley J. Nadonley, John Burgess Walsh, Jr.,* and *David E. Betts,* with whom were *Aaron L. Handleman* and *Mannes, Nadonley & Townsend* and *Betts, Clogg & Murdock* on the brief, for other appellees.

LOWE, J., delivered the opinion of the Court.

This controversy stems from the development during the past decade of 286.6 acres of land as a Planned Residential Unit pursuant to the zoning laws of the City of Rockville. Under the ordinance which provides for planned residential units, preliminary approval of a development is required in two stages. The first, or Exploratory Stage, requires submission of a conceptual plan for approval by the Mayor and Council of Rockville showing the location, size and arrangement of residential, non-residential and recreational uses, traffic circulation and development schedule. Commercial uses, if not previously available, are permitted, with size limitations, only insofar as they will serve the convenience of the residents of the planned residential unit. If the Exploratory Application is approved by the Mayor and Council, the developer may seek the secondary approval by providing a Detailed Planning Application to the City Planning Commission. The Commission is charged with the responsibility of approving or disapproving the submitted documents in accordance with the objectives of the

ordinance and within the limitations of the approval of the Exploratory Application by the Mayor and Council, Rockville Zoning Ordinance § 5-423.[1]

In the case at bar, the developer filed its Exploratory Application on October 15, 1965 and, following several revisions and a public hearing, the application was approved on March 7, 1966. Of particular significance, we note here that the application which the Mayor and Council approved provided for an area of 6.0 acres to be devoted to commercial use.

In May of 1967, the Rockville Planning Commission reviewed and approved a Detailed Planning Stage Application for the community which came to be known as Rockshire. Subsequent detailed plans for particular portions of Rockshire were submitted to the Commission and approved from time to time through June of 1970. As Rockshire matured physically, it seems also to have matured in sophistication, for there developed the Rockshire Civic Association, Inc., which, along with individual property owners, became the primary protagonist here.

This particular controversy developed as a result of the filing with the Commission of a Detailed Planning Stage Application for a shopping center on April 9, 1973. The application proposed that 10.23 acres of the 20 acres still undeveloped be committed to that commercial purpose with a proposed gross floor area of 103,600 square feet. Subsequently the applicant-developer reduced that request to an area of 6.5 acres with 65,000 square feet proposed gross floor area.

The Planning Commission conducted a public hearing on May 29, 1974 at which substantial testimony was heard. The Commission denied the application on July 24, 1974. Applicant appealed the denial and the Mayor and Council remanded the application to the Planning Commission for the taking of further evidence. On February 19, 1975,

---

1. This zoning ordinance was amended effective January 1, 1975, but no change in substance as to the Commission's review was made. See former § 6-2.25A d (2) (B) (b).

another public hearing was held by the Commission which again resulted in its disapproval of the proposed 65,000 square foot shopping center. Immediately thereafter, the applicant filed a new Detailed Planning Stage Application proposing a shopping center of 52,915 square feet, some 12,000 square feet less than previously requested in the rejected proposal. The Commission, presumably relying for its decision on the surfeit of testimony at the previous hearings and on studies which had been provided for those hearings, approved that application on June 10, 1975.

The Rockshire Civic Association, Inc. and certain named residents of Rockshire appealed that administrative ruling to the Circuit Court for Montgomery County and also filed suit in the Circuit Court for Montgomery County, In Equity, against the Mayor and Council of Rockville and the City Planning Commission, as well as the applicant-developer and a shopping center contract lessee. The purpose of this equity suit was to challenge and vacate both the resolution of the Mayor and Council of Rockville approving the Exploratory Application on March 7, 1966, and the June 10, 1975 approval of the shopping center by the Rockville Planning Commission. The suit also sought to enjoin all parties from using the property subject to the suit in any manner other than for single family residential development. A demurrer to the equity suit was sustained without leave to amend and the administrative appeal was dismissed, resulting in an affirmance of the Planning Commission's action. The Rockshire Civic Association, Inc. and its associate parties, have appealed both decisions. The appeal to this Court from the equity action is numbered 1094 and the appeal from the dismissal of the administrative appeal is numbered 1096. We respond to both appeals in this opinion and will address them chronologically.

Having fully reviewed the voluminous records in light of appellants' briefs and arguments, our own response need be but very brief. The issues raised on appeal are the same as those raised below. In both cases we find the comprehensive opinions of the trial judge, the Honorable John F. McAuliffe, not only to be correct but comprehensively so. We will,

therefore, affirm in both instances by adopting as our own the opinion of Judge McAuliffe in each case. We will comment only to the extent that we believe the issues need clarification.

## No. 1094.

Opinion of McAuliffe, J.

"Rockshire Civic Association, Inc. and seven individuals have filed a 'petition,' challenging the validity of the action of the Mayor and Council of the City of Rockville in approving Exploratory Application No. PRU 4 on March 7, 1966, and also challenging the validity of the action of the Planning Commission of the City of Rockville in approving Detailed Planning Application No. PRU 4-H-75 on June 10, 1975.

Each Defendant has filed a Demurrer, suggesting:

1. The Plaintiffs have not alleged, and under the facts of this case are unable to allege, that they were present at the public hearing which preceded the approval of Exploratory Application No. PRU 4 in 1966, or that they participated in anyway in those proceedings.

2. That it appears from the face of the Plaintiffs' pleading that they are barred by laches.

3. That the exclusive remedy of the Plaintiffs to challenge the recent action of the City of Rockville Planning Commission is by administrative appeal to this Court, which has previously been taken.

For all of the reasons suggested by the Plaintiffs, we shall sustain each Demurrer, and prohibit amendment of the Bill of Complaint.

The principal thrust of the 'petition' is to challenge the action of the Mayor and Council of Rockville in approving Exploratory Application No. PRU 4. The Plaintiffs have not alleged that they were present at the public hearing, or participated

in any way in the proceedings before the Mayor and Council of Rockville, which involved this contested action. Therefore, they have not alleged facts which would support their right to appeal or challenge such action, and the mere conclusory statement that they are 'aggrieved' by the action of the Mayor and Council is insufficient. It further appears from representations made at oral argument of this Demurrer that the Plaintiffs would be unable to make allegations of presence or participation in the original hearings or proceedings.

The defense of laches may be made in equity by demurrer where it appears from the face of the Bill of Complaint that the bar is applicable. *Hungerford v. Hungerford*, 223 Md. 316 (1960); *Cargill v. Brady*, 231 Md. 455 (1963); *Hall v. Barlow Corp.*, 255 Md. 28 (1969). Since the doctrine of laches involves not only unreasonable delay but also resulting prejudice to the Defendants, each of these elements must appear on the face of the Bill of Complaint if the Demurrer is to be successful on this ground. *Hall v. Barlow Corp., supra.* A delay of 9-1/2 years in filing a challenge to the approval of an Exploratory Application for a Planned Residential Unit, is clearly unreasonable delay. Furthermore, prejudice need not be shown where an action at law would be barred by limitations. *Brashears v. Collison*, 207 Md. 339 (1955). While no provision for direct appeal from the action of the Mayor and Council existed in the Rockville Zoning Ordinance in 1966, such provision has existed in the Zoning Ordinance for at least the last several years. Where a direct right of appeal exists, the appeal must be noted within 30 days of the action of the Mayor and Council, and thus it is clear that the delay in this case is well beyond the applicable period of limitations at law. Under these circumstances, and considering the magnitude of the delay, a separate showing of prejudice is not required.

Finally, as to that portion of the 'petition' which seeks to challenge the action of June 10, 1975 of the City of Rockville Planning Commission, it is clear that §2-104 of the Zoning and Planning Ordinance of the City of Rockville provides for a direct appeal from such actions to this Court in accordance with the Maryland Rules, Chapter 1100, Subtitle B. Under Rule B1a of the Maryland Rules of Procedure, the statutory appeal is therefore the exclusive remedy.

Accordingly, it is this _8th_ day of October, 1975, by the Circuit Court for Montgomery County, Maryland, in Equity,

ORDERED, that the Demurrers of the Defendants be and the same are hereby sustained, and amendment of the Bill of Complaint is prohibited."

Appellants' argument on appeal is merely a restatement of the issues answered by Chancellor McAuliffe. They contended below that the allegation that they are now property owners in the vicinity of the contested area makes them "parties aggrieved" and add here that the allegation in appellees' demurrer that appellants were not present at the 1966 public hearing "was added by appellees, and should not have been considered by the Court. . . ." This, they contend, is the meaning of _Walker v. D'Alesandro,_ 212 Md. 163, when it says that a demurrer

" . . . cannot either contradict facts . . . alleged or add others. . . ."

Appellants misinterpret their role in the case vis-a-vis that of appellees. It was _appellants'_ responsibility to allege legally sufficient facts to:

" . . . show an interest in the subject of the suit, or a right to the thing demanded, and proper title to institute the suit concerning it; and if such interest or right to sue be not fully shown by the bill itself,

the defendant may demur." *Sellman v. Sellman*, 63 Md. 520, 522.

Appellees did not "add" the allegation that appellants had not attended the 1966 hearing; they simply pointed out the absence of that allegation in the "Petition."

Appellants also reargue that laches should not operate as a bar, citing cases where laches was not à bar to an equity action although a long period of time had elapsed. However, as pointed out by appellants themselves, laches must be determined by the facts and circumstances in each case.

> "The devolution of time, alone, does not constitute laches; it is but one of the many circumstances from which a determination of what constitutes an unreasonable and unjustifiable delay may be made." *Parker v. Board of Elec. Sup.*, 230 Md. 126, 130.

A delay of nine years in contesting the action of the Mayor and Council in approving a community which has been developed and grown to substantial completion is clearly unreasonable and unjustifiable.

### No. 1096.

The opinion of Judge McAuliffe in this case we also adopt. It is as follows:

> "This is an appeal from the action of the City of Rockville Planning Commission dated June 10, 1975, approving Detailed Planned Residential Unit Application No. PRU 4-H-75.
>
> Neither the original Appellee nor any subsequently intervening Appellee has challenged the standing of Rockshire Civic Association, Inc., and in any event it appears that other individual Appellants are aggrieved persons, and have standing to maintain this appeal.
>
> It appears from the record that on October 15,

1965, the owners of 286.6 acres of land in the City of Rockville filed an application with the Mayor and Council of Rockville to develop said land under the Planned Residential Unit provisions of the City's Zoning Ordinance. In accordance with that ordinance, the initial filing was denominated an 'exploratory application.' This application then became known as Application No. PRU 4, and subsequent detailed planning applications became a part of the basic file, receiving additional letter and year designations. Thus, the case directly involved in this appeal became known as PRU 4-H-75.

Following public hearing, the Mayor and Council of Rockville approved the exploratory stage of PRU 4 by passage of Resolution No. 21-66, on March 7, 1966. Pertaining to the proposed commercial development, the Resolution stated as follows:

'The town center shall be constructed as a unit, based upon the findings of a Market Analysis as to its total floor area, provided that such findings shall be subject to the review and judgment of the Planning Commission as to the finally approved area to be constructed, and subject to the finding of the Planning Commission as to the existence of an adequate market for the center. . . .'

Following completion of most of the residential units permitted by the plan, the applicant on April 9, 1973, filed Detailed Planning Application PRU 4-G-73, proposing the construction of a shopping facility containing 103,600 square feet of gross floor area. This application was subsequently modified to reduce the proposed gross floor area of the shopping center to 65,000 square feet, but to no avail, for the application was denied by the Planning Commission on July 24, 1974. At that time, the Commission affirmatively stated that based upon evidence of record, it believed the

shopping center should not exceed 37,900 square feet of gross floor area.

An appeal from this denial was taken to the Mayor and City Council, and the matter was ultimately remanded to the Planning Commission for further consideration. Additional market study data was received and the matter was reconsidered, but again denied on April 9, 1975.

On April 28, 1975, the applicant filed Detailed Planning Application No. PRU 4-H-75, requesting approval of a shopping center containing 52,915 square feet of gross floor area, on a tract comprising 5.77 acres of land. On June 10, 1975 this application was approved by the Commission, and this appeal results from that action.

We shall discuss separately the several contentions raised by Appellants, although not necessarily in the order presented by Appellants.

I. Does the amount of land approved for commercial use exceed that originally authorized by the Mayor and Council of Rockville, and if so, does this constitute a substantial deviation?

Appellants contend the exploratory application sought designation of 5 acres of land for commercial use, and that the action of the Mayor and Council in approving the exploratory application was therefore limited to approval of 5 acres of land for such use. Appellants refer to a memorandum of December 6, 1965 from William H. Hussmann, Jr., Director of Planning for the City of Rockville, addressed to the Mayor and Council, as support for their contention that the application as originally filed sought only 5 acres of commercial use. At page one of this ten page memorandum, Director Hussmann set forth a table of comparisons between the proposed plan and the 'Woodley Gardens Plan' with which the Mayor and Council were then familiar. In making this comparison, Mr.

Hussmann noted that the 'local commercial' requested by the application in the instant case was 5 acres.

We have reviewed the original record, and we find this communication of Mr. Hussmann to have been in error. Indeed, the original application and supporting documents make it clear that the request was for 6 acres of commercial land use. It is difficult to see how applicant's attorney could have made the extent of this portion of the application clearer. At page two of the letter of application, the attorney for the landowner stated as follows:

'Particular attention is invited to the proposal for development as shown in area marked '1' wherein provision is made for a church, lake, *six (6) acres of shopping center*, and an eight (8) to ten (10) story building by the lake, proposed to contain 100 units. . . .' (emphasis supplied)

Appellees' Exhibit 4 in evidence, received by the City of Rockville Planning Commission October 15, 1965, and a part of the original submittal, shows in the notes a proposed area of C-1 commercial use of 6.0 acres, of the total land area of 286.6 acres.

We are persuaded from an examination of the record that the exploratory application sought approval for 6 acres of commercial land use, and that the subsequent approval of the application granted 6 acres of commercial use.

Although Appellants have suggested that in approving PRU 4-H-75 the Planning Commission has approved the use of 6.5 acres for commercial use, it appears in fact that only 5.77 acres are included in this approval.

Since we conclude that the approval of the Planning Commission is within the land area initially approved by the Mayor and Council, we need not consider the question of substantial deviation.

II. Whether the Mayor and Council improperly delegated zoning authority to the Planning Commission.

Appellants, while recognizing the special character of a Planned Residential Unit, and the 'special exception' nature of all proceedings subsequent to the approval of the exploratory application, nevertheless challenge the extent of the authority vested in the Rockville Planning Commission as it related to commercial development. We think Appellants misconceive the effect of the action originally taken by the Mayor and Council, in approving the exploratory application. We view the action of the Mayor and Council as a legislative determination, after notice and public hearing, that 6 acres of the subject property, in an area specifically located, would be reserved for local commercial utilization. We further find that the Mayor and Council did not thereafter delegate to the City Planning Commission any authority to alter this decision as to the location and total area of land designated for future commercial use. Recognizing, however, that the development of this portion of the planned unit would necessarily occur some years later, and no doubt wishing to insure the construction of facilities which would be commercially viable and otherwise consistent with Planned Residential Unit objectives, the Mayor and Council imposed limitations on the construction of the town center. Thus, under the terms of Resolution No. 21-66, the town center could be constructed only as a unit, based upon findings of a market analysis as to its total floor area, with such market analysis subject to the review and judgment of the Planning Commission as to the finally approved area to be constructed, and subject to the findings of the Planning Commission as to the existence of an adequate market for the center. We do not view

these specific limitations as an improper delegation of zoning authority, but rather we view them as consistent with the special exception nature of the planned unit development concept. The Planning Commission had no authority to reduce or increase the acreage set aside for commercial development, but under specific guidelines established by the Mayor and Council, it did have the right to limit the actual construction of commercial facilities thereon in accordance with its reasonable interpretation of existing market data.

III. Is the latter action of the Planning Commission void by reason of the failure of the Mayor and Council to make specific findings of fact at the time it approved the exploratory application?

Appellants contend that the Mayor and Council were required by the Zoning Ordinance to make certain findings of fact before approving any exploratory application, and that the failure of the Mayor and Council to do so in 1966 invalidates the present proceedings.

The short answer to this contention is that these Appellants may not now attack an alleged error of form in the action of the Mayor and Council taken in 1966. The instant appeal is from the recent action of the Rockville Planning Commission, and may not serve as a substitute for a direct appeal or a Court challenge to the earlier action of the Mayor and Council of Rockville.

Certainly the error, if indeed any error occurred, was not jurisdictional, and would not affect the validity of these proceedings.

IV. Does the action of the Planning Commission violate the provisions of §5-409 of the present Zoning Ordinance?

At the time of the approval of the exploratory application, the Rockville Zoning Ordinance contained no limitation on the size of commercial

development in a Planned Residential Unit. However, effective January 1, 1975, the City of Rockville completely revised its Zoning Ordinance, and in the course of doing so adopted §5-409 which provides as follows:

'Not more than five (5) acres within any planned residential unit development may be devoted to uses authorized in the C-1 zone.'

Appellees counter by advancing three alternative propositions: 1.) That transitional provisions in the new Zoning Code make it clear that this restriction was not intended to apply in limitation of the previous approval of 6 acres of commercial utilization in this planned unit; 2.) that upon substantial development and dedication of their property, the property owners acquired vested rights to the utilization of 6 acres of land in the local commercial category; and, 3.) that in any event the Planning Commission has determined, *sub silentio*, that manifest injustice would result from a limitation to 5 acres, so that the property owners should be relieved by the provisions of §1-106(c) of the Zoning Code.

We find Appellees' first argument persuasive. Section 1-106 of the revised Zoning Ordinance provides, in pertinent part, as follows:

'Any application for approval of a special development procedure that had not been approved ... by the Mayor and Council in the case of planned residential unit development, prior to the effective date of this chapter, may be considered and acted upon, but shall be governed in its entirety by this chapter. Any application that had received the approval hereinbefore stated prior to the effective date of this chapter shall *continue in full force and*

*effect and* [2] be governed thereafter by the provisions of this chapter unless, in the opinion of the Planning Commission, manifest injustice would result.' (Emphasis added).

Quite obviously, had the exploratory application been pending at the time the new ordinance took effect January 1, 1975, the Mayor and Council could not have approved 6 acres for commercial development. However, having approved 6 acres for commercial development prior to January 1, 1975, said decision remains fully effective and is not changed by the new ordinance. Of course, actual construction and all further proceedings before the Commission must be in accordance with the provisions of the new Code, but we think it the clear intent of the legislative body that the determinations made by the Mayor and Council as to any Planned Residential Unit were to survive and remain in full force and effect notwithstanding the adoption of the new ordinance.

This makes it unnecessary to consider the alternative suggestions of Appellees. However, we would note that the question of vested or contract rights in planned residential unit development is an interesting and difficult question, which will no doubt return to the Courts of this State. While it is entirely clear that in conventional zoning applications, the property owner acquires no vested interest in the continuation of existing zoning, in the absence of improvement of the property pursuant to such zoning, it is equally true that we are not dealing with conventional zoning. The landowner invariably dedicates to the public use substantial amounts of valuable property, and improves other areas in a manner perhaps not most desirable to him, in return for the privilege of more

2. The language emphasized was not included by appellants in their brief when they set forth the transitional provision above quoted although the brief appears to have quoted it in full without identifying ellipsis.

intensive development, or commercial development, in other areas of the tract. Reduction of the initially approved commercial areas would clearly result in financial detriment to the owner of the property, but unless it would deprive the owner of all reasonable use of his property, such action may not be constitutionally impermissible. See *Mayor & Council of Rockville v. Stone*, 271 Md. 655 (1974); *Mayor & Council of Rockville v. Henley*, 268 Md. 469 (1973). We are pleased to leave this matter for resolution on another day.

We would not be able to accept Appellees alternative contention that the Planning Commission had made a determination, *sub silentio*, that restriction of commercial development to 5 acres would result in 'manifest injustice' pursuant to §1-106(c). The Planning Commission made no such finding, and there is no indication that the Commission addressed itself to this issue. Indeed, we believe the Commission proceeded upon the interpretation of §1-106(c) which has been approved by this Court, and therefore found no necessity to consider the issue of manifest injustice.

V. Did the Planning Commission's approval of PRU 4-H-75, after rejection of PRU 4-G-73 constitute a mere change of mind, or was it based upon a change in the evidence of record?

As previously indicated, on April 9, 1973, the applicant filed Detailed Planning Application PRU 4-G-73, requesting approval for construction of a shopping facility containing 103,600 square feet of floor area. This application was subsequently modified to request 65,000 square feet of area, but was denied by the Planning Commission on July 24, 1974. Appellants refer to the opinion issued by the Planning Commission on July 24, 1974, wherein the Commission made specific findings of fact that the evidence then of record would not support the construction of a shopping facility which exceeded

gross floor area of 37,900 square feet. Appellants next note that after appeal of its denial to the Mayor and Council and a remand of the issue for further consideration by the Commission, the Commission again rejected the application on April 9, 1975. Thereafter, on April 28, 1975, the applicant filed Application No. PRU 4-H-75, requesting 52,915 square feet of floor area, and this application was approved on June 10, 1975.

Suggesting that the Planning Commission had suffered a change of membership, or change of personnel, during these proceedings, and that the approval of Application No. PRU 4-H-75 approximately 60 days following the denial of Application No. PRU 4-G-73 was simply the result of a change of mind, and not the result of any change in the state of the record, Appellants contend that such action is illegal.

In suggesting that the change in the membership of the Planning Commission was itself responsible for the approval, Appellants overlook the fact that the denial of April 9, 1975 occurred well after the change in membership had been accomplished. More importantly, they overlook the fact that subsequent to the specific findings made on July 24, 1974, the Commission received a market report prepared by Larry Smith & Associates, and heard testimony by Mr. Tucker, the author of the report. This testimony and report, if accepted by the Commission, would constitute sufficient evidence to support the Commission's finding of a need for 52,915 square feet of floor space, and therefore would serve as an adequate basis for the Commission altering its previous findings relating to data supporting only 37,900 square feet. It is to be noted that in again denying Application No. PRU 4-G-73 on April 9, 1975, the Commission did not state its present concept of the gross floor area which would be supported by the record at that

point. Accordingly, it is clear that after receipt of the additional evidence, including the report of Larry Smith & Associates, the Commission remained unconvinced of the need for construction of 65,000 square feet of floor area, but apparently was convinced that something in excess of 37,900 square feet was now supported by the facts of record. The Commission's rejection on April 9, 1975, in no way reaffirmed its previous finding of need limited to 37,900 square feet. It can be understood simply as a finding that the evidence did not support a need for 65,000 square feet.

Had the Commission, as a part of its rejection of April 9, 1975, reaffirmed its position that the evidence of record would support a need of only 37,900 square feet, we would be inclined to agree with the Appellants that a reversal of position some 60 days later, without further evidence of record, would constitute an impermissible change of mind. However, as we have sought to point out in some detail, we do not find this to be the case, and indeed it clearly appears that the additional evidence presented to the Commission after remand of PRU 4-G-73 convinced the members that a need had been demonstrated for construction of a gross floor area of at least 52,915 square feet, but not as great as 65,000 square feet. The action of the Commission thereafter, in denying PRU 4-G-73 which sought 65,000 square feet, but shortly thereafter granting PRU 4-H-75, which requested 52,915 square feet, is entirely consistent, and is not the result of an impermissible change of mind.

VI. Was the Commission's approval of the application supported by substantial evidence and fairly debatable?

As we have previously indicated, the Mayor and Council made a decision in 1966 that 6 acres of the Planned Residential Unit were properly devoted to local commercial use, but charged the Planning

Commission with the responsibility for limiting the total floor area of the actual commercial buildings constructed to the area for which a need could be established by market data reflecting need and economic feasibility. It is clear that the approval in this case is limited to uses which are permitted in the C-1, or local commercial zone. Further, from what we have said above, it is clear that the evidence of record which might have been accepted by the Commission is sufficient to support the finding of need for the area permitted, according to current and reliable market studies.

We turn to a consideration of whether the evidence of record is sufficient to support findings that the uses here permitted are not available within reasonable proximity of the subject area; are gauged primarily for the service and convenience of the residents of the subject area; and are designed as a unit of limited size. See §6-2.25Ab (1) (B) (b) of the former Zoning Ordinance of the City of Rockville. These requirements have been relocated in current Zoning Ordinance, in §5-418(f), and restated as follows:

'That the C-1 zone uses proposed in such development are not available within reasonable proximity of the development and are primarily for the service and convenience of the residents of such development.'

The provision with respect to limited size was no doubt omitted because of the adoption of a new section elsewhere in the Code, limiting such commercial development to 5 acres. While §5-418 of the present Code relates to findings which must be made by the Mayor and Council prior to the approval of an exploratory application, and while these requirements are therefore not directly applicable to this application, we nevertheless conclude that the inclusion of essentially similar

statements in each of the ordinances makes it abundantly clear that this was an area for proper concern of the Planning Commission.

We are equally convinced from a review of the record that the Planning Commission did give consideration to these factors, and although its findings of fact might more properly have addressed these issues specifically, we are satisfied that the Commission made such findings and that the record contains facts which make such decisions at least fairly debatable. That these factors were very much of concern to the Planning Commission and its staff is apparent from a reading of a memorandum from the Director of Planning to the Commission concerning the original Application No. PRU 4-G-73 which proposed a 10.2 acre shopping center containing 103,600 square feet of gross floor area. We quote, in part:

'(4.) Shopping Area — Giant Corporation states that '. . . the commercial development on the Rockshire PRU-4 project was, and is, intended to serve the shopping needs of a population segment greater than the population of Rockshire. . . .' This statement, of course, constitutes another blatant violation of the intent of the planned residential unit development technique. Giant Corporation may be right in this assertion; perhaps a 'regional shopping' center is feasible. You do not, however, propose or argue for this type of commercial shopping facility within the context of a planned residential unit development which calls for exclusive and limited commercial service for only residents of the PRU.'

As we have noted, the Commission rejected this application, and required additional market studies. It is significant that the market studies

were limited to a restricted trade area in the immediate vicinity of this planned residential development and that the finding of need made by the Commission was restricted to this limited trade area.

It is unimportant, and indeed inevitable, that some persons outside the Planned Residential Unit will avail themselves of the local commercial facilities. This in no way alters the fact that the record clearly indicates the focus of the Commission was to determine the needs of the residents of the particular neighborhood, and to approve facilities which would principally serve those needs. Though a strong argument can, and has been made that the allocation of floor space ultimately approved for grocery and drug sales will permit the construction of a rather large store, we think the evidence of record supports the finding of the Commission that the floor space approved is consistent with the needs of this Planned Residential Unit, the requirements of law, and the specific charge of the Mayor and Council to the Planning Commission.

Accordingly, for the reasons above-stated, it is this 8th day of October, 1975, by the Circuit Court for Montgomery County, Maryland,

ORDERED, that the action of the City of Rockville Planning Commission dated June 10, 1975, approving Detailed Application No. PRU 4-H-75, be and the same is hereby AFFIRMED, and the within appeal is DISMISSED, with costs to be paid by Appellants."

Because the appellants raise the same issues on appeal to this Court that they raised on appeal to the circuit court, there is little, if any, need to supplement the cogently reasoned opinion of the trial court. For emphasis, if not for clarity, we should point out that the maximum permissible commercial use is 6 acres, not 6.5 as designated by the

Commission. This is because the original application approved by the Mayor and Council in 1966, *i.e.*, the Exploratory Application, PRU 4-66, requested only 6 acres and the Commission's authority was limited not only by the ordinance, but confined by

> "the terms and conditions of approval of the exploratory application by the Mayor and Council." Rockville Zoning Ordinance §5-423 (3).

The trial judge's finding of fact, that the land area actually utilized by the development plan which was finally approved was 5.77 acres, is not "clearly erroneous" and we, therefore, accept it. Md. Rule 1086. The Commission was not authorized to exceed the limitations approved by the Mayor and Council, and as found by the court, the actual area designated did not do so.

This fully comports with the trial judge's opinion under question II, that the Mayor and Council did not wrongfully delegate its authority to alter its decision to the City Planning Commission. But for the possible variation in interpretation of the 6 acres or 6.5 acres subject to commercial use which the chancellor explained, the record clearly reflects that there was no unlawful delegation of authority. See *Prince George's Co. v. M & B Constr. Co.*, 267 Md. 338, 358; see also *Huff v. Bd. of Zoning Appeals*, 214 Md. 48, 61; *Montgomery County v. Merlands Club*, 202 Md. 279, 287-288.

Relative to appellants' sufficiency of the evidence issue, treated as number VI in the chancellor's opinion, it will suffice to say that our review of the record indicates ample evidence to sustain the result reached by the board. The cases cited by appellants in support of their allegations of factual insufficiency are inapposite since they deal, for the most part, with whether there has been sufficient change in a neighborhood since the original zoning to justify a rezoning, and some discuss the test for sufficiency of the evidence to support a decision of zoning authorities to rezone land — "whether there was legally sufficient evidence to support the decision of the authority, *i.e.*, was

it fairly debatable." *Montgomery County v. Shiental,* 249 Md. 194, 199. Even applying that test here, appellants could not prevail.

Issue number V, whether the Commission's approval of 52,915 square feet was a mere "change of mind" from their denial of 65,000 square feet is obviously strained and fully explained by Judge McAuliffe. The reduction of 12,085 square feet represents a greater than eighteen per cent reduction in gross floor area. The Commission was obviously persuaded by that substantial difference. *Cf. Montgomery County v. Pleasants,* 266 Md. 462, 465.

Further comment upon the opinion of the court below is not warranted nor would it be enlightening. In matters of this complexity, it is both commendable and gratifying when the reasoning of a trial judge is so carefully and articulately provided. This is especially true when, as here, the issues and the memoranda presented to the circuit court on appeal are practically identical to the issues and briefs presented to this Court.

> *Judgments affirmed.*
> *Costs to be paid by appellants.*